# Paul Jummel v. Nicholas J. Mann.

1. DELIVERY—*Of a Deed—What is a Sufficient.*—Any disposition made of a deed by the grantor, with the intention thereby to make delivery of it, so that it shall become presently effective, will, if accepted by the grantee, constitute a sufficient delivery.

2. SAME—*Of Release Deed—Intentions of Parties, How Shown.*—The intention to deliver on the one hand, and of acceptance on the other, may be shown by direct evidence of the intention, or may be presumed from acts or declarations, or both acts and declarations of the parties, constituting parts of the *res gestœ*, which manifest such intention.

3. PRINCIPAL AND AGENT—*When the Agent's Knowledge is Not Constructive Notice to His Principal.*—An agent's knowledge is not constructive notice to the principal when the agent is dealing in his own interest with his principal and against the interest of such principal.

4. RELEASE—*Of Trust Deed—Unauthorized, Has no Effect upon Subsequent Purchasers, with Notice.*—An unauthorized release has no effect upon a trust deed as to subsequent purchasers with notice.

5. SAME—*Before Maturity of Mortgage—Ordinary Care in Paying Note.*—It is not such care as ordinarily prudent persons observe in the transaction of business, to pay off a note secured by mortgage, and take a release from the mortgage before its maturity without seeing or taking up the note or making inquiry as to whether the mortgagee is still the holder of the note.

6. RECORDS—*Of Written Instruments—Take Effect When.*—All deeds, mortgages and other instruments of writing which are authorized to be recorded, take effect from the time of filing the same for record, as to all creditors and subsequent purchasers, without notice; and all such deeds and title papers are adjudged void as to all such creditors and subsequent purchasers, without notice, until the same are so filed for record.

**Bill in Chancery.**—Trial in the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Hearing and decree for complainant; appeal by defendant. Heard in this court at the October term, 1898. Reversed with directions. Opinion filed February 23, 1899.

## STATEMENT OF CASE.

Amelia Thomas and James S. Thomas conveyed lots 4 and 5 in a certain subdivision to Theodore H. Schintz, trustee, by their trust deed, dated September 30, 1886, securing their principal note for $4,000, payable five years after date to their own order with interest at six and one-half per

cent per annum, both principal and interest being payable at the office of Schintz. The installments of interest were evidenced by ten interest notes and all of the notes were indorsed by Amelia and James S. Thomas to the order of John Lobstein. Lot 4 was released June 18, 1888, as to which there is no question, the controversy being only with reference to lot 5. The principal note came due September 30, 1891, and a writing was executed purporting to extend the note until September 30, 1896, subject to the payment of ten new interest notes for $130 each. At the time of this extension Schintz took up the principal note, and afterward, October 12, 1891, sold it, with the new interest notes and extension agreement, to Mann.

About September 1, 1896, Mrs. Thomas saw Schintz with reference to a renewal or extension of the loan which fell due at the end of that month. Schintz told her that the owner of the mortgage wanted his money, but that there was another party who would take the loan, and that she and her husband would have to sign new papers. He said he would use the proceeds of the new loan to pay off the old. Pursuant to this arrangement, Mr. and Mrs. Thomas executed a new trust deed to Schintz, dated September 9, 1896, which was acknowledged September 14, 1896, and recorded September 15th, and was given to secure the principal note of Mr. and Mrs. Thomas for $4,000, payable five years after date, with interest at six and one-half per cent per annum, and ten interest notes for $130 each, all payable to their own order and by them indorsed. At the time these papers were executed, Schintz told Mrs. Thomas that she would have to pay $3.10 for a release of the old trust deed. It is claimed that the release deed was never delivered. Mr. and Mrs. Thomas were ignorant about business, and had only a vague conception of the legal nature of their transactions with Schintz; but it is shown that Schintz charged them for a release of the old trust deed and told them he would attend to it. He told Mrs. Thomas that he would get the old trust deed released, and that she had nothing to do except to pay the money. In a subsequent

statement rendered by Schintz to Mr. and Mrs. Thomas, a charge of $3.10 is made for a release deed and recording same, as of September 30th, the date when the old loan matured.

Mann's note fell due September 30, 1896. A few days before that date he went to the office of Schintz and was told that the Thomases wanted the loan extended for a year. Schintz asked him whether he was satisfied with that arrangement, and he said he was, and went away supposing that his loan had been or would be extended for a year. A day or two later he called at the office of Schintz, from whom he received a check in payment of the last interest note for $130 held by him. Mann did not receive any extension agreement nor any new interest notes at this time, but relied on Schintz's statement that the Thomases wanted to extend the loan for a year instead of paying the note. Mann paid no further attention to the matter until about April 1, 1897, when he went to the office of Schintz and received a check for $130 as six months interest on the loan, which he supposed had been extended. Mann accepted and relied upon Schintz's false statements before Jummel had any dealings with Schintz.

On the 6th day of October, 1896, Schintz executed and acknowledged a release deed, by which he assumed to " convey, remise, release and quit-claim " to Amelia and James S. Thomas all right, title or interest acquired by him under the trust deed dated September 30, 1886. This release deed was filed for record on the same day, with the words " Box 519 " printed or indorsed on the outside, being the box in the recorder's office rented by Schintz, in which papers were placed to be returned to his office. The release deed was placed in that box after being recorded and was subsequently returned to Schintz's office. It never came to the hands of Mr. and Mrs. Thomas.

After releasing this deed Schintz listed the new securities among the mortgages which he had for sale. Jummel at that time had some money which he wished to invest. He was bookkeeper for the Independent Brewing Association,

which had done business with Schintz, as its attorney, and he sent a Mr. Frickow down to the office of Schintz to get a memoranda of mortgages which he had for sale.   Frickow brought back several memoranda, and among them, a memorandum of the new Thomas loan.   Jummel selected this and went down to see Schintz about it on the 14th of October.   He told Schintz he wanted a first mortgage, and Schintz told him that this was a first mortgage.   Before Jummel went out to get the money to pay for the papers he asked Schintz if it was a first mortgage, and Schintz said yes, it was a good first mortgage.   Jummel thereupon went to the Union Trust Company Bank, and procured two cashier's checks, amounting to $4,000, which, with $25.25 for accrued interest, he paid to Schintz, and took the securities away with him October 14, 1896.   The first interest note fell due March 9, 1897.   Jummel sent it to Schintz for collection, and on the day of its maturity Frickow called but was told that the money had not come in.   The next day, however, Jummel received a check from Schintz for the amount.   He heard nothing more about the matter until after the failure of Schintz, which occurred in July, 1897.

Mann and Jummel both relied upon Schintz.   Mann had the title examined by Schintz, and had no other lawyer when he bought the first set of papers.   He had been dealing with Schintz in this way for a long time.   Schintz told him that he was buying a first mortgage.   He never went to look at the property, but left the whole matter in the hands of Schintz.   Jummel was equally confiding.   Schintz told him he was buying a first mortgage, and he accepted this statement.   He did not have the title examined, and did not have any search made in the recorder's office.   He did not look at the property before buying, but had perfect confidence in Schintz.   In point of reliance on Schintz there is nothing to choose between the parties.   Both trusted him completely.

Schintz failed to pay the money received from Jummel to Mann, and on the 10th day of August, 1897, Mann took

a judgment by confession against Mr. and Mrs. Thomas on the old note, and on the 9th day of September filed his bill to foreclose the trust deed and set aside the release. Jummel filed his cross-bill to foreclose the trust deed securing his notes, claiming that his lien was superior to Mann's. Mr. and Mrs. Thomas also filed their cross-bill to enjoin the collection of Mann's judgments. After issues were made, there was a reference to the master to take proof and report the same with his conclusions. The master recommended a decree setting aside the release, and making the Mann trust deed a first lien, the trust deed securing the notes held by Jummel a second lien, dismissing the cross-bill of Mr. and Mrs. Thomas, and directing a sale of the property to pay the liens in said order. Jummel alone has appealed.

WILLIAM W. CASE, attorney for appellant.

Delivery and acceptance rest on the intention of the parties. Masterson v. Cheek, 23 Ill. 72; Walker v. Walker, 42 Ill. 311; Price v. Hudson, 125 Ill. 284; Miller v. Meers, 155 Ill. 284.

Knowledge of an agent is not imputed to his principal when the agent's purpose would be thwarted by imparting that knowledge. Kennedy v. Green, 3 M. & K. 699; Wright v. Bruschke, 62 Ill. App. 358; Gammon v. Huse, 100 Ill. 234; Higgins v. Lansingh, 154 Ill. 301; Seaverns v. Presbyterian Hospital, 173 Ill. 414.

In no case, whether the grantees be infants or adults, is a formal delivery and acceptance essential, though there must be acts shown evincing such intention. The intention of the party is the controlling element in contracts of this character, and whenever it is manifest by facts and circumstances that the grantor in delivering a deed to the recorder to be placed on record, without any explanation, intended to part with his title, the presumption is and should be that he then delivers it for the benefit of the grantee and it should and will take effect from that moment, an acceptance by the grantee being presumed from the beneficial nature of the transaction. Masterson v. Cheek, 23 Ill. 72.

No formal delivery to the grantee in person was necessary. If the grantor in a deed intends, when executing it, to be understood as delivering it, that is sufficient. The intention of the party is the controlling element. Walker v. Walker, 42 Ill. 311.

Any disposition made of the deed by the grantor with the intention thereby to make delivery of it, so that it shall become presently effective as a conveyance of the title, will, if accepted by the grantee, constitute a sufficient delivery. The intention to deliver on the one hand and of acceptance on the other may be shown by direct evidence of the intention, or may be presumed from acts or declarations, or both acts and declarations of the parties, constituting parts of the *res gestæ* which manifest such intention. Price v. Hudson, 125 Ill. 284; Miller v. Meers, 155 Ill. 284, 293.

The reason why knowledge of an agent is imputed to his principal is that it is presumed he will communicate his knowledge as in duty bound. The rule is applicable only when that presumption holds good. Hence it can not be invoked in case of a sale by the agent to his principal, nor in any other case where the personal interest of the agent is adverse to that of the principal, or where the agent's plans would be defeated by communicating the knowledge which he possesses. Kennedy v. Green, 3 M. & K. 699, 717; Wright v. Bruschke, 62 Ill. App. 358, 367; Gammon v. Huse, 100 Ill. 234, 241.

As a rule a principal is chargeable only with knowledge of that which his agent learned in the course of his agency, not with what he learned in his private business or as agent for some one other than the principal sought to be charged. Wright v. Bruschke, 62 Ill. App. 358, 367, and cases cited.

IVES, MASON & WYMAN, attorneys for appellee.

The execution and recording of the deed without delivery does not render it operative. The subsequent assent of the grantee to receive it renders it for the first time operative. Kingsbury v. Burnside, 58 Ill. 310; Dale v. Lincoln, 62 Ill. 22; Brown v. Brown, 167 Ill. 631.

It is essential to delivery that there be an acceptance.

Herbert v. Herbert, Breese, 354; 1 Devlin on Deeds (2d Ed.), Sec. 285, and cases cited; Bryan v. Walsh, 2 Gilm. 557; Ferguson v. Miles, 3 Gilm. 358; Dickerson v. Merriman, 100 Ill. 342; Weber v. Christen, 121 Ill. 91.

When a deed of trust given to secure a debt is released through mistake or fraud, a subsequent incumbrancer can not obtain a prior lien. Barbour v. Mortgage Co., 102 Ill. 121; Campbell v. Trotter, 100 Ill. 281; Miller v. Wack, Sax. 204; Trenton Bkg. Co. v. Woodruff, 1 Gr. Ch. 117; Garwood v. Eldridge, Id. 145.

The payment of negotiable paper secured by mortgage without demanding the production of the notes is such negligence that if loss accrues thereby the courts will place such loss upon the parties making such payment. Keohane v. Smith, 97 Ill. 156; Cooley v. Willard, 34 Ill. 68; Windel v. Bonebrake, 23 Fed. Rep. 165.

All deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers without notice, until the same shall be filed for record. Hurd's R. S., Ill. (1897), Chap. 30, " Conveyances," Sec. 30.

Deeds, mortgages and other instruments of writing relating to real estate, shall be deemed, from the time of being filed for record, notice to subsequent purchasers and creditors, though not acknowledged or proven, according to law. Ibid., Sec. 31.

Ogle v. Turpin, 102 Ill. 148, is a case of reliance on the release as well. The court said:

" The ruling of this court has been, under our recording laws, that a purchaser or incumbrancer may rely on and be protected by a clear and regular title of record."

MR. PRESIDING JUSTICE WINDES, after stating the case as above, delivered the opinion of the court.

Appellant argues, first, that the release deed was not void

because it was never delivered to Mr. and Mrs. Thomas; second, that appellant is not chargeable with notice of Schintz's fraud; third, that the neglect of appellant to examine the records is immaterial; fourth, that appellant is entitled to the rights of a purchaser for value without notice; and, fifth, that the registry laws, the principles of equity, and the interests of public policy combine to give appellant the prior lien.

As to the first contention, we think it is clearly apparent from the evidence, that in making and recording the release Schintz acted for Mr. and Mrs. Thomas; that it was their intention that the release should be made, and that when it was executed by Schintz and placed of record it became a complete deed as to them to all intents and purposes the same as if Schintz had delivered it into their hands and they had thereafter directed him to place it on record. Price v. Hudson, 125 Ill. 284–6; Bovee v. Hinde, 135 Ill. 137 Provart v. Harris, 150 Ill. 41–8; Miller v. Meers, 155 Ill. 291–3.

In the last case the court approves and quotes from the Price case, *supra*, viz. :

" Any disposition made of the deed by the grantor, with the intention thereby to make delivery of it, so that it shall become presently effective as a conveyance of a title, will, if accepted by the grantee, constitute a sufficient delivery. (Citing cases.) The intention to deliver on the one hand, and of acceptance on the other, may be shown by direct evidence of the intention, or may be presumed from acts or declarations, or both acts and declarations of the parties, constituting parts of the *res gestæ* which manifest such intention."

Mr. and Mrs. Thomas understood there was to be a release, and Schintz told them he would attend to it; that he would get the old trust deed released, and that they had nothing to do but pay the money. They left the whole matter to Schintz to manage, and there is no doubt but that he intended that the release should be a perfect deed, and that was what they desired. It is true, they expected that the notes secured by the trust deed should be paid, but that was left to

Schintz. He carried out their and his intention as to the release, and that was sufficient. It is immaterial, so far as concerns the validity of the deed as between them, that he failed to pay Mann.

Second. As to whether appellant is chargeable with notice of Schintz's fraud in releasing the Mann trust deed, will depend upon whether Schintz was appellant's agent. It can not be said that Schintz was appellant's agent to examine the title. The title was not examined, and appellant went to Schintz to buy the notes and mortgage because he had them for sale. Appellant asked Schintz if the mortgage was a first mortgage, and Schintz told him that it was. Appellant had no attorney, and did not search the records himself, nor have any one do so. He never did any business with Schintz before and did not afterward, except that he sent the first interest note to Schintz and received from him a check for the amount of the note.

We can see no difference between their relations and those of any other purchaser and seller of a mortgage security, beyond the fact that Schintz had theretofore been the attorney of appellant's employer, the Brewing Association, which we regard as of no significance as tending to establish agency. Did Schintz become appellant's agent because he was the trustee in the deed of trust securing the notes purchased by appellant? He became the trustee in this deed September 15, 1896, the day it was recorded, if not before. Appellant first did business with him October 14, 1896, and as we have seen, there was no basis for such agency up to the time of the purchase of the notes by appellant. If Schintz then became the agent of appellant, he became such when the notes were purchased by appellant and not before.

To make appellant chargeable with Schintz's knowledge in this case, Schintz must have been his agent before the purchase was complete. If, however, it may be said Schintz was in any sense appellant's agent, he was acting in his own interest and against appellant's. An agent's knowledge is not constructive notice to the principal when the agent is

dealing in his own interest with the principal and against the interest of the latter.   Higgins v. Lansingh, 154 Ill. 301; Seaverns v. Pres. Hospital, 173 Ill. 414.

In the Higgins case, *supra,* it was held that when the president of a corporation, having knowledge of infirmities of his title thereto, sold it securities, his knowledge was not notice to the corporation—that he was a stranger to the corporation.   In the Seaverns case, *supra,* the same doctrine is announced as an exception to the general rule that knowledge of the agent is imputed to the principal, and it was held that the knowledge of the president of a corporation, being a member of a firm of real estate agents who were negotiating a loan to the corporation, was not to be charged to the corporation.   The court quotes from the Higgins case, viz.:

" His interest (the president's) is opposed to their's (the corporation's), and the presumption is, not that he will communicate his knowledge of any  secret infirmity of the title to the corporation, but that he will conceal it," and further say :   " Here the president was negotiating the note and mortgage to the defendant in error, and he stands, under the authorities, as a stranger to the hospital, and must be held not to represent it in the transaction so as to charge it with the knowledge which he may have possessed but did not communicate to it, and which it did not know."

Schintz well knew that if he communicated to appellant his fraudulent intent and the fact that the notes secured by the Mann trust deed had not been paid, appellant would not purchase.   To keep silent would be in his interest and against appellant's interest.   We therefore think he occupied the same position relatively to appellant that the president did to the corporation in the two cases, *supra.*

Third.   That the neglect of appellant to examine the records before purchasing is wholly immaterial, is, we think, plain.   The only information which an examination of the records would have given him, was that the Mann trust deed was released of record, and the trust deed securing the notes he desired to purchase was a first lien.   This knowledge he obtained from Schintz, and that was true so far as appeared from the records.

The fourth and fifth contentions of appellant will be considered together. These contentions present the question which of two equally innocent and confiding holders of securities secured by separate trust deeds to the same trustee, under the facts above stated, shall have priority. We can not, for lack of time, attempt to follow counsel on either side in a discussion of the multitudinous propositions advanced and cases cited by them on this question. An examination of every case cited by either counsel will show some fact which will distinguish it from the case at bar, though the language of the court in many of the cases might seem to strongly favor the view of the counsel citing it. We will not undertake to review them, but refer especially to Insurance Co. v. Eldredge, 102 U. S. 545; Peters v. Bain, 133 U. S. 696; Myers v. Ross, 3 Head (Tenn.), 59; Ely v. Scofield, 35 Barb. 330; Vannice v. Burgen, 16 Ia. 555; Home Savings Bank v. Bierstadt, 168 Ill. 618, cited by appellee, and Williams v. Jackson, 107 U. S. 478; Wilson v. Park Comm'rs, 70 Ill. 46; Walton v. Follansbee, 131 Ill. 147; Kigour v. Guckley, 83 Ill. 109; Barrett v. Hinckley, 124 Ill. 46; Himrod v. Gilman, 147 Ill. 293; Humble v. Curtis, 160 Ill. 193; Burt v. Batavia, etc., Co., 86 Ill. 66; and McAuliffe v. Reuter, 166 Ill. 491, cited by appellant, and especially relied upon to establish their respective contentions.

In Barbour v. Scottish Am. Co., 102 Ill. 121, in which it was claimed that a trustee, without authority of the holder of notes secured by it, had released a trust deed, and that a subsequent incumbrancer, relying thereon, could not obtain a prior lien, the court said : " If the deed of trust was released by Welsh (the trustee) without any authority from Barbour (the holder of the note), and the act was never sanctioned or ratified by him, it is apparent that the Mortgage Company (the junior incumbrancer) could not hold the property as against complainant's deed of trust (the one released)." A reading of this case shows that this language of the court was unnecessary to a decision of the case, because the court held the proof showed that the

holder of the notes secured by the senior trust deed had authorized its release, and even if it was not authorized, his subsequent acts ratified it.   The notes secured by the released trust deed had not matured at the time of the release.   In Stiger v. Bent, 111 Ill. 328-40, in which the court states, "The real contest here is, whether the payment by Stiger (a subsequent purchaser) to Davis (the trustee in the deed sought to be foreclosed), and the entry of satisfaction by Davis on the record of the deed of trust, released the land from the operation of that deed, so far as Stiger and those claiming under him are concerned," and refers with approval to its decision in the Barbour case, *supra*, reciting, however, the whole substance of the decision.   The court also refers to the Eldredge case, 102 U. S. 545, *supra*, as stating the law that an unauthorized release has no effect upon the trust deed as to "subsequent purchasers with notice," and said :   "It is claimed here, however, that Stiger was not a purchaser with notice, and upon the solution of this hinges the present question."   The court held that as Stiger refused to purchase unless he could pay off the trust deed, and applied to the trustee for that purpose, and the record of the deed of trust informed him, before the entry of satisfaction, that the note, which was overdue, was not payable to the trustee, but to Bent, and was negotiable by indorsement, and as he did not require its production and cancellation, he was not an innocent purchaser.

In Land Co. v. Peck, 112 Ill. 443, it was held, citing the Barbour case, *supra*, and Stanley v. Valentine, 79 Ill. 544, as authority, that releases of trust deeds which were executed and placed in escrow by the trustees to be recorded on the performance of certain conditions, and which were recorded in violation of such conditions and without the assent or knowledge of holders of bonds secured by the trust deeds, whose bonds had not matured when the releases were recorded, were inoperative as against the bondholders. The court say :   "It is very true that those subsequently acquiring interests in the property, were liable to be misled and take the premises to be unincumbered by these trust

deeds, from these releases appearing of record; but we do not see that it was in any way from the fault of the bond-holders, or that there has been any conduct of theirs which should visit them with the loss of their security." It does not appear from the opinion that there were any innocent subsequent purchasers or incumbrancers and the bonds had not matured.

In a number of cases it has been held that it is not the usual care which an ordinarily prudent person observes in the transaction of his business, to pay off a note and take a release from the mortgage before its maturity without see-ing or taking up the note or making any inquiry as to whether the mortgagee is still the holder of the note. Windle v. Bonebrake, 23 Fed. R. 165; Skeele v. Stocker, 11 Ill. App. 144; Keohane v. Smith, 97 Ill. 160.

In two of the cases, Barbour and Peck, *supra*, the securi-ties had not matured, and in the Stiger case, *supra*, Stiger was held to be chargeable with notice for other entirely sufficient reasons, though the paper had long passed matu-rity when the release was made. We therefore think that these facts distinguish these cases from the one at bar.

Our recording act has the following provisions, viz.:

" All deeds, mortgages, and other instruments of writing, which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent pur-chasers, without notice; and all such deeds and title papers shall be adjudged void as to all such creditors and subse-quent purchasers, without notice, until the same shall be filed for record." Hurd's R. S., Ill. (1897), Chap. 30, Sec. 30. " Deeds, mortgages and other instruments of writing relating to real estate, shall be deemed, from the time of being filed for record, notice to subsequent purchasers and creditors, though not acknowledged or proven, according to law." Ibid, Sec. 31.

There being no circumstance shown by this record which would tend to establish that appellant was chargeable with notice of Schintz's fraud, and the note held by appellee being overdue, we think he was entitled to rely upon the records as they appeared at the time he purchased his secu-

rities. Schintz had the power to release the Mann trust deed when the notes were paid. The notes had matured and Schintz had made and recorded the release before appellant saw him with regard to the purchase. Appellant had the right to rely upon the record, which said, in effect, that the notes secured by the Mann trust deed had been paid— they then being overdue. We think it immaterial that he did not actually see the record showing the Schintz release, because he had received that information, in effect, from Schintz, and could have learned no more from a personal search of the records.

If appellant is to be deprived of a first lien by reason of Schintz's fraud, because appellee was equally innocent with him, then the recording laws of the State are of little avail to a subsequent incumbrancer who, in loaning his money, relies upon the records. Before he can be protected from fraudulent releases, he must, at his peril, inquire as to the payment of securities, however long past maturity at the time of the release. There would seem to be no especial hardship in a rule of decision making it incumbent on him to inquire in case of release before maturity of the debt as shown by the record, or trust to the honesty of the trustee making the release.

The decree will be reversed, with directions to the Superior Court to enter a decree giving appellant a first lien and appellee a second lien on the premises in question. Reversed with directions.