W. A. ROWLAND, TRUSTEE ET AL., RESPONDENTS, v. BOSTON INSURANCE COMPANY, APPELLANT.—55 S. W. (2d) 1011.

Kansas City Court of Appeals. November 21, 1932.

598

*C. F. Hale, James H. Whitecotton* and *Harry J. Libby* for respondent.

*Hogsett, Smith, Murray & Trippe* for appellant.

BLAND, J.—This is an action upon a mortgage clause of a fire insurance policy. There was a verdict and judgment in favor of plaintiffs in the sum of $2500. Defendant has appealed.

The facts show that one Zelva Smith was the owner of a business building situated in the City of Macon and occupied by herself and her partner, one Burris. They operated a wholesale confectionery business in the building under the trade name of Burris & Company. On April 6, 1929, defendant issued to Miss Smith a policy of fire insurance in the sum of $2500 upon the building. The premium for the whole term of three years was paid in advance. On October 28, 1929, Miss Smith executed and delivered to plaintiff, C. F. Hale, her promissory note in the sum of $2500, due on or before five years after date, bearing six percent compound interest from date and on the same day gave Hale a deed of trust upon the property insured to secure said note. On the day that she gave Hale the note and deed of trust she caused the local agent of defendant to attach a mortgage clause, in favor of Hale, to the policy, making the loss, if any, payable "to the insured and C. F. Hale or assigns as their respective interests may appear, subject, nevertheless, to all the terms and conditions of the policy." On November 29, 1929, a fire occurred damaging the building in an amount in excess of the amount of the policy.

The evidence further shows that shortly after the policy was taken out by Miss Smith she was sued in an alienation of affection suit, which was settled and dismissed about the first of the year 1930. It was the contention of the defendant at the trial of the present suit that as soon as that suit was brought against Miss Smith she sought to convey and encumber her property so as to avoid having it levied upon in case the suit went against her; that in pursuance of this course she conveyed the property insured to her brother by warranty deed on October 10, 1929, and that, having so conveyed the property, the provisions of the policy providing that it should be void if the interest of the insured be other than unconditional and sole ownership or if any change other than that of the death of the insured, should take place in the interest, title, or possession of the subject of insurance, were violated. It was also claimed by the defendant that the encumbrance given by Miss Smith to Hale was without consideration. This is based solely on the contention that it was mortgaged to him to defeat a possible judgment creditor.

The facts surrounding the execution of the warranty deed mentioned show that Garfield Arthur Smith and Zelva Smith are brother and sister; that in February, 1927, they settled their father's estate and in pursuance of this settlement Zelva Smith executed and delivered to her brother an unsecured note for $2600; that after she went into the wholesale confectionery business in Macon her brother requested her to give him some security for his note and for this purpose suggested that she give him a warranty deed on the store building and a second deed of trust on the farm, which she then owned, that they had inherited from their father, it being the intent that the warranty deed, as well as the second deed of trust, be used as security or mortgages for the payment of the said $2600 note Miss Smith consented to the plan and on October 10, 1929, called by telephone the plaintiff, C. F. Hale of Bevier, who was her cousin. a lawyer and a notary public, and instructed him to prepare a second deed of trust on the farm in favor of her brother to secure the said $2600 note and, also, to prepare a warranty deed to her brother covering the store building. Hale prepared the papers and mailed them to Miss Smith at Macon. She then signed and acknowledged them and put them on the flat top desk in the office of Burris & Company. Later that day she had another telephone conversation with Hale in which she told him that the warranty deed was to be used as a mortgage to secure the payment of the $2600 note. Hale advised her that a warranty deed was not the proper form of security and suggested that he would prepare a quitclaim deed from her brother and his wife to Miss Smith for the purpose of removing the cloud of the warranty deed, Hale being under the impression that the warranty deed had been placed of record.

On the following day (October 14th) Miss Smith, her brother and his wife, Hale and Burris met at the office of Burris & Company, Hale bringing with him the quitclaim deed which he had prepared. Hale, in the presence and hearing of both Miss Smith and her brother, stated that the warranty deed was not the proper form of security to use and advised against its use and Miss Smith and her brother then agreed that they would not use the warranty deed for any purpose but would destroy it and that the brother would accept the second deed of trust on the farm as his sole security for the $2600 note. Thereupon, Garfield Arthur Smith and his wife signed and acknowledged the quitclaim deed before Hale, as notary, who was still, at that time, under the impression that the warranty deed had been recorded. Garfield Arthur Smith then delivered the quitclaim deed to Miss Smith and she delivered to him the deed of trust. These papers were then placed on the desk in the office of Burris & Company. The warranty deed which lay on the desk during all of this time was not handled by any one that day, except as hereinafter stated. It was not delivered by Miss Smith to her brother. In fact, he did not see it. However, before the parties separated the subject of recording came up and Garfield Arthur Smith directed his wife to take the second deed of trust to the Office of the Recorder of Deeds to record it. Miss Smith then requested her sister-in-law to also take the quitclaim deed and record it. The sister-in-law then picked up what she believed to be the deed ·of trust and the quitclaim deed and took them to the office of the Recorder of Deeds and left them with him, paying the fee for recording them.

Several days thereafter Garfield Arthur Smith received by mail from the Recorder the recorded deed of trust and the warranty deed. This was the first time that Garfield Arthur Smith had seen the latter. Realizing that a mistake had been made he, at once, mailed the warranty deed to his sister at Macon, informing her of the error in recording. Thereafter, Miss Smith had possession of the warranty deed and her brother made no claim of ownership of the building, and the property remained continuously in the possession of Burris & Company. The quitclaim deed was recorded in March, 1930. The agent of the defendant was informed before the fire as to the mistake in recording the warranty deed and stated that it would not affect the insurance in any manner.

The evidence relative to the giving of the note and mortgage in the sum of $2500 to Hale by Miss Smith, shows that Hale represented her as one of her attorneys in the alienation suit; that he charged a fee of $1000 for his services and that at the time of the execution of the note and deed of trust he loaned her the sum of $1500 in cash. This made a total sum of $2500 that she was in-

debted to him at the time of the execution of the mortgage which was given to secure such indebtedness.

Defendant in making its contention that there was, in fact, no consideration for the $2500 note and deed of trust points to Hale's testimony in which he said that he did not check out from any bank the $1500 that he loaned Miss Smith but that he might have had it hid in a tin can somewhere. Miss Smith testified that she did not deposit the $1500, upon its receipt by her, in any bank and had stated, at one time, that the loan was $2500 in cash. Complaint is made of the refusal of defendant's instruction D, which reads as follows:

"The court instructs the jury that if you believe and find from the evidence that the alleged deed of trust held by plaintiffs was executed by Zelva Smith for the purpose of encumbering said property so that her creditors, if any, could not take the same under execution, and that no consideration in fact existed for said deed of trust, if you so find, then you are instructed that plaintiffs have no claim under said policy of insurance and cannot recover in this suit, and your verdict shall be for defendant."

This instruction was properly refused for the reason that even though the note and deed of trust given by Miss Smith were without consideration in that they were for the purpose of encumbering her property so as to defeat her creditors, the obligation was valid as between the parties thereto and in fact as to all of the world, except her creditors or a defrauded subsequent purchaser (Reynolds v. Faust, 179 Mo. 21, 28; Larimore v. Tyler, 88 Mo. 661, 668; McLaughlin v. McLaughlin, 16 Mo. 242, 249; Stevenson v. Edwards, 98 Mo. 622; 27 C. J., pp. 653, 654, 655), and even had the jury believed that the encumbrance was fraudulent and void as against creditors and purchasers they would have been required to find for plaintiff as against defendant who was a mere insurer. [Third Nat'l Bk. v. Yorkshire Ins. Co., 267 S. W. 445; Groce v. Phoenix Ins. Co., 94 Miss. 201, 207; Steinmeyer v. Steinmeyer, 64 S. C. 413; Home Ins. Co. v. Allen, 93 Ky. 270, 273; The Phoenix Ins. Co. v. Abner Mitchell, 63 Ill. 43; S. Burson v. Fire Ass'n, etc., 136 Pa. St. 267, 283, 284; Rosenstein v. Traders' Ins. Co., 79 N. Y. S. 736; Ayres v. Hartford Fire Ins. Co., 17 Ia. 176; Baldwin v. Phoenix Ins. Co., 60 N. H. 164, 166; Treadway v. Mut. Ins. Co., 29 Conn. 68; 3 Cooley's Briefs on Ins. (2 Ed.), pp. 2148, 2184, 2690.]

However, it is said that plaintiffs pleaded that the note and deed of trust was a valid and subsisting loan, based upon a valid consideration; that the testimony adduced by them at the trial was to this effect and that the jury were required to so find in plaintiffs' instruction No. 1. Neither plaintiffs' pleadings or their instruction No. 1 say anything about a consideration for the $2500 note and

deed of trust. It is true that, while defendant adduced no testimony on the subject, the jury were not required to believe that Hale loaned Miss Smith any money or performed any services but, from the testimony, it was within their province to arrive at the conclusion that the note and mortgage were without consideration and were for the purpose of encumbering the property to defeat a possible judgment creditor in the alienation suit. But, even had the jury so found, as we have before stated, this would have been no defense. Of course, Hale was not to be defeated because his testimony tends to show that there was an actual consideration for the encumbrance, although the jury might have believed that there was none.

It is claimed that because the mortgage clause reads that Hale or his assigns were insured "as their respective interests may appear" and that a clause of this kind in a policy makes the mortgagee the simple appointee of the mortgagor to receive the proceeds to the amount of the former's interest (Berry v. Equitable F. & M. Ins. Co., 317 Mo. 1119, 1128; Allen v. Fid. Phoenix Ins. Co., 221 Mo. App. 763), Hale is entitled to recover only the amount of his interest in the property and it was, therefore, necessary for plaintiffs to show a valid consideration for the mortgage and if it was based upon no consideration plaintiffs "had no mortgage, no deed of trust and no note and they were not entitled to maintain this suit and collect under this policy and the loss payable clause attached to it."

What we have said, in effect, disposes of this contention. As before stated, the conveyance was not void, even if it were without consideration and solely for the purpose of defrauding a possible judgment creditor. Such voluntary conveyances are only void at the election of the creditors of the grantor and subsequent defrauded purchasers. As between the mortgagor and the mortgagee in this case the mortgage was just as good as though $2500 in actual money had been loaned, if it was not, by Hale to Miss Smith at the time of the execution of the encumbrance and as a consideration therefor. No action can be maintained by Miss Smith against Hale invalidating or adversely affecting the mortgage in any particular. See cases last cited on this point, especially Steinmeyer v. Steinmeyer, supra; Larimore v. Tyler, supra; McLaughlin v. McLaughlin, supra; 27 C. J., p. 654; 3 Cooley's Briefs on Ins. (2 Ed.), 2690.

Complaint is made of the giving of plaintiffs' instruction No. 1. The portions of the instruction complained of read as follows:

"If the jury shall find the issues for the plaintiffs, and shall find and believe from the evidence that plaintiff, C. F. Hale, is the owner of the note and deed of trust for $2500, mentioned in evidence, and that no part of the principal or interest, other than for one year, on said note has ever been paid to him, and that on December 7,

1929, a fire occurred in the brick building mentioned in evidence, and that in consequence of such fire, that the value of said brick building was less after the fire than it was before the fire, and that there was no change in the ownership of said building after the issuance of the policy and before said fire, then you will make your verdict for the plaintiff the amount of loss sustained.''

The instruction further covers the matter of the method of calculating the loss and instructs the jury to allow that amount plus six per cent interest from the 20th day of January, 1930 (which the record shows was the date of the demand for the payment of the loss) ''to this date.''

It is claimed that the instruction fails to have the jury find the following six requirements for a recovery on plaintiffs' part:

''(1) That either plaintiffs or Zelva Smith or both of them caused the loss payable clause in evidence to be attached to the policy making the loss payable to C. F. Hale as his interest might appear.

''(2) That plaintiffs and Zelva Smith have complied with all the terms and provisions of the policy of insurance.

''(3) That Zelva Smith was the sole and unconditional owner of the property and had not violated any of the terms of the policy.

''(4) That plaintiffs had suffered a particular pecuniary loss as a result of the fire and had made demand under said policy of insurance and loss payable clause to the defendant to pay said loss.

''(5) That Zelva Smith had not in fact conveyed the property away in violation of the terms and conditions of the policy.

''(6) That Zelva Smith had been guilty of no false and fraudulent representations to the defendant following the loss.''

As to item 1 it is sufficient to say that there was no controversy at the trial concerning the attaching, by the defendant, of the mortgage clause to the policy at the instance of Miss Smith and the acceptance of the contract upon the part of Hale, prior to the loss. It was, therefore, unnecessary to submit the matter. [Davidson v. Transit Co., 211 Mo. 355 to 361.] As to item 2, although the petition alleges that plaintiffs and Miss Smith complied with all the terms and provisions of the policy, it was unnecessary for the jury to so find, but it was only necessary for them to pass upon the issues made by the answer, there being no controversy as to the existence of the policy, the attaching of the mortgage clause and the loss. [Stephens v. Fire Ass'n, etc., 139 Mo. App. 369.] Although plaintiffs pleaded more than was necessary to authorize a judgment for them, they were not required to prove anything in excess of enough to sustain a recovery. [Morgan v. Sunflower Zinc Co., 199 Mo. App. 26; Lampe v. United Rys. Co., 209 Mo. App. 357; Wessel v. Lavender, 262 Mo. 421.]

As to the third item, the matter of violation of the policy in reference to the insured remaining the sole and unconditional owner of the property was a matter of defense, which matter was submitted in other instructions. Plaintiffs' instruction is, therefore, not erroneous in this respect. [Collins v. Phoenix etc., 285 S. W. 783.]

As to the fourth item there was no issue as to whether plaintiffs suffered a pecuniary loss, the sole defense being that the mortgage was given for the purpose of encumbering the property so as to defeat a creditor which, as before stated, is no defense. There was no issue made at the trial concerning a demand for the payment of the loss. The record discloses without any controversy that such a demand was made.

Item number five refers to a matter of defense which was covered by other instructions. Item number six was not covered by other instructions but the false and fraudulent representations complained of in the answer were that Miss Smith represented to defendant that she was the sole and unconditional owner of the property at the time of the fire. The jury were required to find that she was such an owner at that time, under other instructions given by the court as, under them, they could not return a verdict for the plaintiffs until they found this fact. Therefore, there was no material error in failing to instruct upon the pleaded defense of false and fraudulent representations.

It is complained that the instruction tells the jury to find for the plaintiffs in the amount of the loss sustained by them instead of the amount due them under their alleged mortgage. The instruction requires the jury to find that Hale was the owner of the $2500 mortgage and that no part of the principal or interest, other than one year's interest had been paid. This was in accordance with plaintiffs' testimony. Under that testimony plaintiffs were entitled to a much larger sum than the verdict of the jury, which was merely for the principal amount of the loan. There was no issue raised at the trial concerning the amount due upon the mortgage in question, except that it was without consideration because it is claimed that the property was conveyed to defraud a possible future creditor. As before stated, as among Miss Smith and the parties to this lawsuit, the amount of plaintiffs' interest in the property was the amount of the note and the interest thereon. We find no merit in the contention now made.

It is said that the instruction in the use of the words "no change in the ownership of the building" was the submission of a legal conclusion to the jury. The matter of the change of the ownership was one of defense. As other instructions given by the court properly covered this defense, there is no merit in defendant's contention.

Complaint is made of the giving of plaintiffs' instruction No. 2, which reads as follows:

"If the jury find and believe from the evidence that the warranty deed, dated October 10, 1929, from Zelva Smith to Garfield Arthur Smith, mentioned in evidence, was signed and acknowledged by Zelva Smith, by agreement between said Zelva Smith and said Garfield Arthur Smith that the same was to be, in fact, a mortgage, to secure to Garfield Arthur Smith the payment of a debt of $2,600 that was owing by Zelva Smith to him, and that there was no intention and no agreement that the same was to have effect as a deed conveying title from Zelva Smith to Garfield Arthur Smith to the lot of ground and brick building mentioned in evidence, then, if you so find, you are instructed that said warranty deed did not violate any of the terms of the policy of insurance sued on and constitutes no defense to this action."

It is admitted by the defendant that if the warranty deed was intended only as a means of affording security to Garfield Arthur Smith for the debt, if any, owed him by Zelva Smith, the conditions of the policy of insurance as to alienation of the title had not been violated. But complaint is made that the instruction assumes that there was a debt of $2600 owing by Zelva Smith to her brother. We think that the instruction does assume this fact. Whether or not there was an indebtedness of $2600 or any other sum owing from Zelva Smith to her brother had a bearing upon whether or not it was the original intent that the warranty deed be a mortgage, for, if there was no indebtedness, then the claim that the deed was a mortgage would fall.

However, we find from an examination of the record that no issue was made at the trial concerning the existence of the $2600 indebtedness. When Garfield Arthur Smith was asked what the $2600 note was given for, defendant objected to the matter as immaterial. The witness was not cross-examined on the subject. Miss Smith testified as to the existence of the note and the circumstances surrounding its giving and neither was she cross-examined by defendant concerning the matter. There was no testimony whatever adduced on the part of the defendant as to the existence of the note or the circumstances surrounding its execution. There was no error in the instruction because it assumed the undisputed fact in question. [Davidson v. Transit Co., supra.]

It is true, that the jury could have reached the conclusion, under the circumstances, that the warranty deed was, in fact, what it purported to be and that it was without consideration and for the purpose of defrauding a possible judgment creditor in the alienation suit. If the conveyance of the title was for the purpose indicated it was a violation of the conditions of the policy providing

against a change in title. There is no contention to the contrary. However, the defendant was in this situation; it was claiming that the deed was without consideration and was given for the purpose already indicated, but should the jury find otherwise it still had a good defense if the jury believed plaintiffs' evidence that there existed an indebtedness, but arrived at the conclusion that, instead of the warranty deed being given to secure this indebtedness, the debt was the consideration for the warranty deed as such. Therefore, it may have been the policy of the defendant at the trial not to contest the matter of the $2600 indebtedness but to leave it to the jury to say that this was the consideration for the warranty deed, that is, the conveyance of the absolute title to Garfield Arthur Smith. However, it is unnecessary for us to speculate as to the reasons why defendant took the position at the trial that the existence of the $2600 indebtedness was immaterial, for the record shows that this was the theory and it will be bound by that theory here.

It is claimed that the instruction not only assumes the existence of the debt but that the warranty deed was given to secure it; that it comments on the evidence with respect to the intention of the parties; that it assumes that there was no intention and agreement between the parties that the warranty deed should convey the title from Zelva Smith to her brother and assumes that the conveyance was merely in the nature of a mortgage and deed of trust.

Defendant does not point out how it is possible that the instruction be subject to the criticisms made of it. We think there is no merit in them. It starts out by telling the jury that if they "find and believe from the evidence," etc. The facts submitted in the instruction were required to be found by the jury and are not assumed, except in respect to the existence of the $2600 indebtedness. [Sparks v. Harvey, 214 S. W. 249; Southwest Mo. R. Co. v. Public Service Comm., 219 S. W. 380, 391.]

Complaint is made of plaintiffs' instruction No. 3. This instruction is similar to their instruction No. 2 except that it submits in part that if the warranty deed was to be a mortgage and if the same was not delivered and it was mutually agreed that it should be destroyed and, through mistake or inadvertence, it was recorded against the intention of the parties thereto, the deed constituted no defense to the action. Practically the same criticisms are made of this instruction as are made of plaintiffs' instruction No. 2 and for the reasons given in answer to the last named criticisms, we overrule defendant's contention.

Complaint is made of the giving of plaintiffs' instruction No. 6, which reads as follows:

"The court instructs the jury that the fact that there may have been no consideration, or a different consideration from that claimed

by plaintiffs, for the note and deed of trust to C. F. Hale, would of itself constitute no defense in the case.''

The criticism of this instruction rests largely upon the contention that there was evidence that there was no consideration for the note and deed of trust but that they were given to encumber the property in order to defeat a possible judgment creditor. We have already answered a similar contention and it is unnecessary to go further into the matter. We find no conflict between this instruction and plaintiffs' instruction No. 1.

It is insisted that the court erred in admitting the testimony of Hale, Burris and the wife of Garfield Arthur Smith, as to the conversation had among Zelva Smith, her brother and Hale at the meeting wherein it was agreed that the warranty deed, instead of becoming security for the $2600 note, was not to be delivered, but was to be destroyed. It was proper for plaintiffs by showing the circumstances to overthrow the presumption of delivery of the deed arising from its recordation. The question as to whether or not there has been a delivery of a deed is largely a question of intent and the declarations of the parties to the deed were admissible, not only for the purpose of showing their intent at the time, but also as verbal acts indicative of their purpose, which was admissible as part of the *res gestae*. [Renshaw v. Dignan, 128 Ia. 722, 725; Jummel v. Mann, 80 Ill. App. 288; 18 C. J., p. 413; Brightwell v. McAfee, 249 Mo. 562, 580; Stephens v. Stephens, 232 S. W. 979; 41 C. J., p. 345.] We have examined defendant's authorities and find them not in point.

The evidence shows that Hale was attorney for Zelva Smith and was there counselling her in reference to the advisability of giving a warranty deed as security for the note. Although he was Miss Smith's attorney, his advice seems to have been sought, or at least accepted, by both her and her brother. To show the declarations of Miss Smith and her brother, who were the parties to the deed, as having a bearing on their intention at the time, without showing the statements of Hale made to them, would make the conversation incomplete and more or less unintelligible. We think that what any one of the three said in the conversation bearing upon the matter before them was clearly competent as a part of the *res gestae*. [See authorities last cited.]

However, it is claimed that the court, over defendant's objection, improperly admitted the conversation had over the telephone between Miss Smith and Hale the day before the meeting at Macon. We find from the record that at the outset there was a general objection to all statements made by any of the persons that we have referred to, but the objection was too broad, for the reason, as before stated, the conversation had at the meeting in Macon on October

11th, was competent. We fail to find where the court ruled adversely to any proper objection made by defendant to the conversations had between Zelva Smith and Hale over the telephone. (We here insert the testimony of Hale in the respect complained of as set out in defendant's reply brief.)

"Well, I found out in conversation the warranty deed was given for collateral for a loan.

"Mr. Trippe: I object.

"The Court: Sustained to what you found out—state what was said by the parties.

"A. She said that Arthur Smith, her brother, wanted security for this $2,600 note that was unsecured, and that this second deed of trust and this warranty deed we have been talking about so much was made by her as security for this $2,600 unsecured note.

"Mr. Trippe: I move to strike out that answer.

"The Court: Overruled.

"And to the action of the court in so ruling the defendant, by its counsel, then and there at the time duly excepted and saved its exceptions.

"Q. Go ahead and relate anything you said to her about it. A. I told her that I thought it was unnecessary to give the warranty deed and I didn't approve of that form of security for a loan, and I suggested that a quitclaim deed be prepared.

"Mr. Trippe: I object to what he suggested.

"The Court: Sustained. I am permitting the conversation but not conclusions."

It will be noted that the first objection was sustained and then the court said: "State what was said by the parties." There was no objection to this interrogation, but a motion was made to strike out the answer. The objection was too late and no reason was given for striking out the testimony. [Green v. Strother, 201 Mo. App. 418, 427, 428.] The next objection was sustained. We find that the court sustained many objections made to what was said over the telephone by Hale and evinced every intention of ruling out such testimony when proper and timely objections were made to it.

The judgment is affirmed. All concur.