CATHERINE P. GIBBONS, RESPONDENT, v. CHOMEAU & ENGELLAND, INC., A CORPORATION, APPELLANT.—210 S. W. (2d) 715.

St. Louis Court of Appeals. Opinion filed April 20, 1948.

*Wm. C. Berthold* and *John A. Nolan* for appellant.

*John T. Sluggett* for respondent.

WOLFE, C.—This is a suit for 25 per cent of the profits of Chomeau & Engelland, Inc. for the year 1945 which amount is claimed to be due plaintiff by reason of an oral contract entered into on December 23, 1944. The jury found for plaintiff in the sum of $3500.

The defendant corporation was engaged in a real estate business which consisted of acting as broker for the sale of real estate, making property appraisals, developing subdivisions, building houses, and selling a general line of insurance. The corporation was formed in 1940, and its president from that time on was Richard D. Chomeau. Plaintiff, Catherine P. Gibbons, was from the time of the incorporation secretary and treasurer of the company up to the date of her discharge on November 23, 1945. She acted as clerk, bookkeeper and office manager. Her duties were varied and included the closing of real estate deals and the preparation of documents and papers necessary; she met and transacted business with many customers of the company and kept the records on insurance and insurance renewals. Her salary was $250 per month. She related that on December 23, 1944, Chomeau asked her to estimate the amount of the profits for the current year and, when she informed him that she estimated it at the sum of $4400, they discussed the division of it. Chomeau proposed that he would take 45 per cent and that the balance would be divided on a basis of 5 per cent to Mr. Beecher, 27½ per cent to Mr. Engelland, both of whom worked for the company, and 22½ per cent to plaintiff. Plaintiff objected to the proposed division, suggesting that her position with the company was as important as that of Engelland, and requested 25 per cent. Chomeau agreed with her and she received 25 per cent of the profits for 1944. Up to this point both plaintiff's testimony and Chomeau's testimony are in substantial agreement except that there was some conflict as to whether Chomeau proposed to give Beecher 10 or 5 per cent, but there is no dispute as to the final division made for the year 1944.

As to what occurred after the division was agreed upon plaintiff related that Mr. Chomeau then came to an agreement with her to pay her 25 per cent of the profits for the year 1945 and continue her salary at $250 per month if she would stay with the company for the ensuing year. Pursuant to that agreement she continued to work for the defendant company until the 23rd of November, 1945, when she was handed a letter of dismissal by Chomeau.

In its answer defendant denied that any such an oral agreement had been made, and further alleged that plaintiff had been discharged

because of her failure to perform her duties. Chomeau testified that nothing was said about the year 1945, and that he made no agreement about any future division of the company's profits during the conversation in December, 1944. He stated that plaintiff failed to keep the books posted and wasted time in conversation with another employee, and that after several admonitions he discharged her.

On December 31, 1945, the defendant corporation distributed to Chomeau, Engelland and Beecher a total bonus of $14,000. The company's bookkeeper testified that $17,443.53 was made in 1945 as a net profit on the sale of lots owned by the company, and that $3,052.10 was reserved for the payment of taxes, and the books of the company, while listing the above items, set up the net income for the year 1945 as $6,237.54. The books also disclosed that the $14,000 paid as bonuses to the three mentioned was charged to salaries. The corporate name of the defendant had been changed several times. It was originally incorporated as Chomeau & Jaudon, and in 1943 plaintiff's name was substituted for that of Jaudon and its name became Chomeau & Gibbons. In September, 1945, the name was changed to Chomeau, Gibbons & Engelland, and after the plaintiff's discharge it was changed to Chomeau & Engelland. Plaintiff never owned any stock in the company, but one share was issued to her and it had been endorsed over to Chomeau.

This is in substance the evidence except for the portions of the testimony that will be referred to in more detail in passing upon the points raised.

The first point raised on this appeal is that the court erred in admitting in evidence testimony relating to occurrences that took place prior to 1944. The record does not disclose that testimony can be so classified. Plaintiff's testimony as to the contract was wholly about her conversation with Chomeau which took place on December 23, 1944. It is true that she testified that she reminded Chomeau of her years of service and that she had given up another position to come with him in 1939 but this and all of the other statements she made were a part of the conversation out of which she said the contract was reached. It is asserted by defendant that such parts of plaintiff's testimony were not a part of the res gestae, and it is contended with equal vigor by the plaintiff that they are. Defendant cites: [State ex rel. v. Metropolitan Life Ins. Co., 343 Mo. 435, 121 S. W. (2d) 789, l. c. 793; Schroeder v. Rawlings, 344 Mo. 630, 127 S. W. (2d) 678, l. c. 681, 682; Evans v. Sears, Roebuck & Co., (Mo. App.), 129 S. W. (2d) 53, l. c. 58; Russell v. Metropolitan Life Ins. Co. (Mo. App.), 149 S. W. (2d) 432.] None of these cases have anything to do with proof of a contract but have generally to do with death or injury where statements were offered as proof of the fact. It is in cases such as these that the most frequent application of the doctrine of *res gestae* is encountered, where statements or declarations are "made

contemporaneously with, or immediately preparatory to, a particular litigated act, which tend to explain, illustrate, or show the object or motive for the act, . . . .'' [Nanney v. I. H. Shell & Son (Mo. App.), 138 S. W. (2d) 717; Nelson v. Wabash R. Co. (Mo. App.), 194 S. W. (2d) 726.] In these cases, although the statement is not in fact a part of the litigated act, it is so closely allied to it, and so explanatory of it, that the doctrine of *res gestae* enters in and makes the statement a part of the thing itself. It is a doctrine rarely applicable to the proof of an oral contract for the simple reason that statements made by the parties entering into an oral contract are in fact the contract, and they require no doctrine of the law of evidence to make them so. If the alleged contract had been in writing it is quite possible that much of the oral evidence to which objections have been made would have been included in explanatory clauses, and if defendant's theory is carried to its logical conclusion the only part of a written contract that would be admissible would be the bare recital of the promises and commitments of the parties.

Touching upon the evidence admissible to prove an oral contract, it is stated in 17 C. J. S., Sec. 593, as follows:

''Where the making of an oral contract is disputed, all the acts and declarations of the parties tending to establish or refute it are admissible, together with all the facts connected with the history of the transaction, and the surrounding circumstances, . . . .''

This rule is asserted in Green v. Cole, 127 Mo. 587, 1. c. 30 S. W. 135, as follows:

''It appears that the evidence of the two witnesses as to whether the proposition was accepted, was irreconcilably contradictory. The truth must be drawn from the subsequent acts and declarations of the parties and all the circumstances.''

In the case under consideration the contract was denied, the positions of the two parties were ''irreconcilably contradictory'', and in view of this it is difficult to see why any testimony which tended to show the relationship of the parties, the value placed by defendant upon plaintiff's services and its knowledge of her past work were not admissible to prove the basis upon which rested the final meeting of the minds.

If, however, it can be said that we must look to the doctrine of *res gestae* to support the admission of the evidence, the discussion of this in Royle Mining Co. v. Fidelity & Casualty Co., 161 Mo. App. 185, 1. c. 199, 142 S. W. 438, is in point where the court stated:

''But it is further contended by the appellant that the correspondence as a whole between the insurance company and its resident manager at Carthage was admissible as a part of the *res gestae*; that as the letters, declarations and acts were contemporaneous with the act in question, they are admissible in evidence as showing the knowledge or information which the party had

who performed the act and as showing the circumstances under which appellant undertook the defense of the McDaniels litigation; that appellant's officers had every reason to believe that those letters had been delivered and that they had a right to act on that supposition and did so act.

"The term *res gestae* in the law of evidence has a greatly extended application. It may be properly defined as a collection of primary facts constituting the necessary and immediate field of a judicial inquiry, and within such field of immediate inquiry all the facts are competent evidence. (16 Cyc. 1148.) Statements of an agent made at the time in relation to the business then being transacted and in regard to which he was authorized to act form a part of the *res gestae* if said or done while the transaction is passing and are admissible evidence against the principal." Rowland v. Boston Ins. Co., 227 Mo. App. 597, 55 S. W. (2d) 1011, l. c. 1016. It is therefore held that the court did not err in the admission of the evidence.

Other errors assigned go to the question of the profits of the company. Upon this point there was considerable conflict as to what should be included and what should not be. The books were in evidence and one item shown to be profit was derived from the sale of real estate owned by the defendant. The contract here alleged does not exclude profits derived from the sale of capital assets and the court therefore was not in error when it refused an instruction offered by the defendant which excluded this profit from the consideration of the jury. There was evidence that a bonus of $14,000 had been distributed on the 31st day of December, 1945. This was declared by plaintiff to have been a distribution of profits although charged on the books to salaries. The jury apparently took that figure as the profits for the year as the amount allowed by their verdict equals 25 per cent of $14,000.

The issues in this case are issues of fact. The contract is asserted by one and denied by the other. Profits are declared by one to have been $23,289.64 and by the other $6,237.54. It appears that no evidence was improperly admitted and that the instructions properly submitted these two issues of fact to the jury which decided them.

Your Commissioner therefore recommends that the judgment be affirmed.

PER CURIAM:—The foregoing opinion of WOLFE,. C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *McCullen, P. J.,* and *Anderson* and *Hughes, JJ.,* concur.