Pauline FERRELL and Janet Marie Ferrell, By Her Next Friend and Natural Guardian, Pauline Ferrell, Plaintiffs-Appellants,

v.

Warren S. TOPP, Jr., Administrator of the Estate of Jesse Hamby, Jr., Deceased, Defendant-Respondent.

No. 50366.

Supreme Court of Missouri,

Division No. 2.

Dec. 14, 1964.

Motion for Rehearing or to Transfer to Court En Banc Denied Jan. 11, 1965.

John D. Hux, Sikeston, and James E. Reeves, Caruthersville, for appellants.

Marshall, Craig & Littmann, Robert M. Craig, St. Louis, and Powell, Jones & Ringer, Marvin E. Jones, Dexter, for respondent.

HENRY J. WESTHUES, Special Commissioner.

This is an action to recover damages in the sum of $143,000 for wrongful death alleged to have been the result of willful and wanton misconduct. Plaintiffs are Pauline Ferrell and Janet Marie Ferrell, wife and daughter of Rudy D. Ferrell, deceased. The defendant is Warren S. Topp, Jr., administrator of the estate of Jesse Hamby, Jr., deceased.

Rudy D. Ferrell and Jesse Hamby, Jr., lost their lives on November 27, 1961, when a plane crashed into Holden Mountain, one of the Boston Mountains of Arkansas, near Harrison. The flight originated at Sikeston, Missouri, and the intended destination was Fort Smith, Arkansas. Jesse Hamby, Jr., was a co-owner of the plane and is alleged to have been in control of it when it crashed.

The case was tried on the theory that Ferrell, who had no interest in the plane, was a guest of Hamby; further, that the Guest Statute and the laws of Arkansas governed the case.

A trial in the Circuit Court of Scott County, Missouri, where the parties resided, resulted in a nine-juror verdict for the defendant. Plaintiffs appealed from the judgment entered.

(We shall refer to the parties as plaintiffs and defendant throughout the opinion.)

Plaintiffs brief three points wherein they claim the trial court erred. In substance, they are: First, that the court erred in excluding evidence concerning a statement alleged to have been made by Jesse Hamby, Jr., shortly before the flight to the effect that if the mountains were too high he would "just make a hole in one of them." Second, that the court erred in giving instruction No. 4, requested by defendant, wherein the words "willful" and "wanton" were defined. Third, that the court unduly limited the closing argument of plaintiffs' attorney.

In the brief, the defendant says there is no merit in any of the points briefed by plaintiffs and, even if so, they are immaterial for the reason that the evidence was insufficient to support a verdict for plaintiffs. This claim is made for two reasons: First, that the evidence failed to show Jesse Hamby, Jr., was operating the plane at the time of the crash. Second, that the evidence failed to sustain a finding that Hamby was guilty of willful and wanton misconduct.

It is obvious that the contentions of the parties require a full statement of the evidence favorable to the plaintiffs. We shall first dispose of defendant's argument as to the sufficiency of the evidence with reference to the point that Jesse Hamby, Jr., was operating the plane when it crashed. As to this point, the evidence justifies the following statement of facts. The airplane in question was a Piper Tripacer (PA-22) which had been owned by Jesse Hamby, Jr., and a Mr. Story since September, 1961. On November 27, 1961, Hamby went to the airport at Sikeston where with the help of Albert Pearson, an employee at the airport, he serviced the plane. They examined a map and discussed the air route to Fort Smith, Arkansas, where Hamby intended to go. Hamby filed a flight plan for a visual flight to Fort Smith. The trip began at about 4:30 or 5:00 p. m. Jesse Hamby, Jr., his son Robert L. Hamby, age 15, who survived the crash and was a witness in this case, and Mr. Ferrell occupied the plane. Jesse Hamby, Jr., was at the controls with Ferrell occupying the other front seat while Robert L. Hamby sat in the back seat. Robert L. Hamby testified that his father checked the plane before the take off and set the altimeter. Jesse Hamby, Jr., had been a pilot with 354 hours flying time. He had a pilot's certificate permitting him to

operate single engine planes. The certificate permitted him to fly under VFR which means Visual Flying Rules. He was not permitted to fly under IFR which means Instrument Flying Rules. Ferrell had a student's permit and had to his credit "solo time two hours and thirty-five minutes and about 21 hours of dual time." In the fatal flight, Ferrell occupied a front seat from which position he could operate the plane.

During the flight, Jesse Hamby, Jr., communicated with officials at various Flight Service Stations as to weather conditions. The plane was landed at Flippin, Arkansas, where the parties remained a few minutes. On take off, the three took the same positions in the plane as before. Jesse Hamby, Jr., operated the plane. The crash into Holden Mountain occurred shortly after the plane passed by Harrison, Arkansas. The son, Robert L. Hamby, testified that he went to sleep during the flight. Robert's evidence as to what occurred shortly before the crash was stated in substance in defendant's brief, as follows: "He did wake up, however, when they were over Harrison, Arkansas and saw the lights of the town, after which he went back to sleep. Robert Hamby next awoke when the landing lights were turnd on and off, he believed by his father, and at that time he heard Jesse Hamby, Jr., say there was too much fog and he couldn't see the ground. Just before the crash he saw Jesse Hamby, Jr. push the throttle and pull back on the stick. This occurred after he heard the pants of the aircraft hit something just a moment before the crash."

Robert L. Hamby had flown with his father a number of times and was acquainted with the instruments at the control board. There is no evidence tending to indicate that Ferrell at any time had anything to do with the operation of the plane. We deem the above statement of facts, taken from the record, ample to justify a finding that Jesse Hamby, Jr., was operating the plane when it crashed.

We now consider the point that the evidence was not sufficient to sustain a finding that the plane was willfully and wantonly operated in disregard of the rights of others. This, indeed, is a close and difficult question. Before reviewing the evidence, as to this point, we should note that we are not dealing with negligence or even gross negligence, but with willful and wanton misconduct. A number of states have Guest Statutes which provide that a guest may not recover damages for personal injuries from his host unless the injuries were the result of willful or wanton misconduct. Arkansas has such a statute. The subject of "Willfulness or Wantonness" is treated at length in 65 C.J.S. Negligence § 9, pp. 374–386, where numerous cases from various states are cited.

We shall now state some additional evidence pertaining to the question of willfulness and wantonness. Albert Pearson, an employee at the Sikeston Aviation Service, testified that he helped Jesse Hamby, Jr., service the plane prior to the take off. He was asked about a conversation he had with Hamby and we quote the following from his testimony:

"Q (By Mr. Hux) Will you state that conversation please?

"A Well, we was looking at the map. We was mapping out his route and over around Harrison, Arkansas, and I told him it was a rough country; he would have to be careful.

"Q What did he say, if anything?

"A He said that, 'Well, it they get too high for me'—if the mountains was too high he would just knock a hole in one of them."

This evidence was stricken by the trial court and the jury instructed to disregard it. The ruling was made an assignment of error. We deem the ruling erroneous and shall, later in this opinion, state why we deem it so.

The evidence showed that the mountains on the chosen route by way of Flippin and Harrison to Fort Smith were the highest in that territory. The map disclosed that Holden Mountain was about 2200 feet above sea level and other mountains were as high as 2700 feet. Enroute to Flippin from Sikeston, Jesse Hamby, Jr., obtained information as to weather conditions. He learned that a cloudy and foggy atmosphere was such that the clearance over the mountains was limited. For example, at Holden Mountain, according to information given to Jesse Hamby, Jr., the clearance was only 475 feet.

Lee Ruebush, manager of the Sikeston Airport, was a witness for plaintiffs. This witness was an expert pilot of 22 years' experience. He was also an instructor in various subjects such as flight, instruments, multiengine, and jet. He testified there were a number of routes that Jesse Hamby, Jr., could have taken from Sikeston to Fort Smith; that the route chosen by Hamby was the most dangerous; further, that the height at which Hamby was flying was dangerous in that territory even by daylight; that a clearance of 475 feet was not a reasonably safe clearance under the weather conditions on that night.

■■■ We are of the opinion that whether Jesse Hamby, Jr., was guilty of willful or wanton misconduct was a jury question. It is urged that the evidence failed to show intent. Intent is not always a necessary element to constitute willful or wanton misconduct. The Supreme Court of Arkansas so held in the case of Scott v. Shairrick, 279 S.W.2d 39, 1. c. 42(6), where the court said: "Under many circumstances it is difficult to draw the line between willful negligence and gross negligence. ' " 'To be willfully negligent,' " ' as stated in the Splawn case, [Splawn v. Wright, 198 Ark. 197, 128 S.W.2d 248] supra, ' " 'one must be conscious of his conduct, and although having no intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally or probably result in injury.' " ' Since the testimony here indicates that appellant was driving at an excessive speed under the existing conditions and since it shows that he barely avoided a wreck on two different occasions just previous to the wreck and that he repeatedly ignored warnings to drive more carefully, we are forced to the conclusion that the trial court properly allowed the jury to decide the degree of appellant's negligence." The plaintiff in that case had obtained a judgment under the Arkansas Guest Statute. Note that the court held intent to injure was not necessary to constitute willful misconduct. See also Rhyne v. Thompson, Mo., 284 S.W.2d 553, 1. c. 557(10), and 65 C.J.S. Negligence § 9c(4), p. 383. There are cases where intent to injure is a necessary element. See Rector v. Tobin Construction Co., Mo., 377 S.W.2d 409, 1. c. 413 (4). That was a case in trespass and Rector relied on willful or wanton misconduct. The case is not in point under the facts of the case now before us.

In Steward v. Thomas, 222 Ark. 849, 262 S.W.2d 901, the court held that whether a person's misconduct was willful or wanton must be determined by the facts and circumstances of each individual case. In the case before us, we may assume that Jesse Hamby, Jr., had no intention of crashing the plane against the mountain or to injure his own son or his friend Ferrell. However, the evidence showed that immediately before the flight was undertaken, Jesse Hamby, Jr., was warned that the route he was selecting was dangerous. In spite of that he chose the most dangerous route at a time when he knew he would be in the dangerous territory after dark; further, he learned that there were clouds and fog making the flight even more dangerous. The evidence was that the clearance between the clouds and the top of the mountains was such as to render it unsafe for airplane traffic. It was further shown that Jesse Hamby, Jr., was flying at an altitude which was considered dangerous even in the daytime. We are of the opinion that in the circum-

stances a jury would be justified in finding that the conduct of Jesse Hamby, Jr., was willful, wanton, reckless, and in disregard of consequences. See 65 C.J.S. Negligence § 9c(3), p. 381, and the Arkansas cases cited supra.

■ We noted above that in our opinion the trial court erred in rejecting the evidence concerning Jesse Hamby, Jr.'s statement to the effect that if the mountains were too high he would make a hole in one of them. Defendant says that the statement was so incredible as to have no probative value. The statement may be considered frivolous in a way but the statement, made in response to a warning that the territory near Harrison was rough, tends to prove that Jesse Hamby, Jr., had notice of the danger before the flight was undertaken. In other words, the statement tends to show that Jesse Hamby, Jr., knowingly chose a dangerous route. The probative value of the evidence was for a jury to determine.

Plaintiffs complained of instruction No. 4, the last paragraph of which reads as follows: "In this connection, you are instructed that the phrase 'Willfully and wantonly operated' as used in these instructions means a willful, deliberate or intentional act or failure to perform a known duty affecting the life of said guest with knowledge and appreciation of the fact that danger is likely to result therefrom."

The record shows that after the jurors retired they returned to the courtroom and informed the trial judge they needed a clarification on the Arkansas law. A juror, after quoting the above-quoted paragraph of instruction No. 4, said to the judge, "The question is whether or not the failure to perform a duty goes with this 'willful, de-liberate, or intentional act,' or whether that is two different—" At this point, the judge interrupted and informed the jury, in substance, that the instructions must be read as a whole. The jury returned to the jury room and later returned a verdict for the defendant with nine jurors signing the same.

Plaintiffs say the instruction as written "contained an improper definition of wilful and wanton conduct in that it submitted an intentional conduct," and that the instruction in repeating the phrase "willful and wanton" three times in the instruction gave undue prominence to that phrase.

It would serve no useful purpose to set forth in full all of instruction No. 4. This is for the reason that the case must be remanded for the error in excluding evidence with reference to the conversation Jesse Hamby, Jr., had with Pearson about the mountains near Harrison. On retrial, the instruction can be shortened and so worded as to avoid making intent an issue in the case.

The claim that the trial court unduly limited the argument of plaintiffs' attorney need not be considered for the reason that the situation probably will not occur on retrial.

For reasons herein stated, the judgment for defendant is reversed and the cause remanded for retrial.

PER CURIAM.

The foregoing opinion by WESTHUES, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.