MENORAH MEDICAL CENTER,
Plaintiff-Appellant,

v.

Annais D. DAVIS and Marguerite Davis,
Defendants-Respondents.

No. 25469.

Kansas City Court of Appeals,
Missouri.

Feb. 1, 1971.

Thomas E. Thompson, Glass, Bohm, Hirschman, Rostov & Kelly, Kansas City, for plaintiff-appellant.

Dale P. Sullivan, Kansas City, for defendants-respondents.

DIXON Commissioner.

Plaintiff-appellant filed suit on account for hospital charges totaling $2,533.20. Defendants, parents of the minor patient, filed a general denial and affirmatively pleaded an agreement by plaintiff to provide free care. The jury returned a defendants' verdict. Plaintiff complains of improper admission of evidence and improper instruction.

Defendants' daughter was admitted to the hospital March 4, 1968 and stayed until March 7, 1968 accumulating charges of $145.65. Thereafter, at the request of the parents, a Dr. Moss (sometimes referred to as Dr. Morris) was treating the child in his office, and her condition became such that she needed hospitalization. She was re-admitted on March 18, 1968 and remained in the hospital until April 20, 1968, during which time she had two surgical procedures for osteomyelitis of the frontal bone of the skull, a serious condition which might have resulted in her death. The hospital charges for this admission were $3,328.05; and thereafter, on May 21–23, the child was admitted for a tonsillectomy, the hospital charges being $198.20. The defendants made payments of $210.65 over a period extending from May 1, 1968 to September 5, 1968. The account was also reduced $928.05 upon an evaluation of the financial position of the defendants by the Social Service Department of the hospital, leaving the balance upon which suit was brought. Plaintiff showed an agreement to accept the child as a "service patient" which it claims relieved the patient of doctors' charges but not hospital charges. Drs. Schoolman and Moss were members of the staff but received no pay, being authorized to bring their patients to the hospital and use the hospital facilities while treating their private patients. Dr. Schoolman, a neurosurgeon, also "taught" by consulting with interns and residents. So far as affirmatively appears, he made no charges in this case.

The plaintiff offered evidence that the charges were reasonable, proper and necessary. It also offered evidence that the defendant, Marguerite Davis, had signed an agreement to pay for the hospital's services at the time of the admissions. Plaintiff claimed a plan was arranged for payment of the hospital bill at the rate of $100 a month for twenty-four months. Defendants admit the proposal but deny its acceptance.

Upon the second admission of March 18, the child was brought to Menorah Hospital by her mother, at which time Dr. Moss, the family physician, and Dr. Schoolman, a neurosurgeon, were present. During the direct examination of defendant, Annais Davis, the following questions, answers and objections appear:

"Q Okay, did you talk to any other person?

"A I talked to Dr. Morris again about this, I did.

"Q Okay, now, who did you talk to in reference to this?

"A Dr. Schoolman said, and Dr. Morris said she would be recommended.

"MR. THOMPSON: I'd like to make an objection to this question and *and* approach the bench.

(WHEREUPON, the following proceedings were had and entered of record in the presence, BUT OUT OF THE HEARING OF THE JURY:)

"MR. THOMPSON: Any representation by Dr. Schoolman and Dr. Morris would first of all be hearsay. Second, they are not agents of the corporation. It's already been shown, so any such statement by the defendant would be ir-

relevant and it wouldn't be bound, they have no authority.

"THE COURT: Is this prior to her admission for March 18?

"MR. SULLIVAN: Yes.

"THE COURT: Overruled.

"(WHEREUPON, the following proceedings were had and entered of record IN THE PRESENCE AND HEARING OF THE JURY:)

"Q (By Mr. Sullivan) Okay, would you tell us what they said?

"A I learned from them and also from some of the other doctors that they did have such a plan and they would work out something for me.

"Q Okay, now, what was this plan?

"A They said he would take care of this hospital bill. It would be on them because they accepted her as a patient.

"MR. THOMPSON: Your Honor, I renew my objection to that.

"THE COURT: Overruled.

"Q (By Mr. Sullivan) Now, at this time the girl was admitted—was then admitted as a patient at the hospital, that is, after your conversation with the doctor she was then admitted as a patient to the hospital?

"A Yes, she was a patient at the hospital.

During direct examination of the defendant, Marguerite Davis, the following occurred:

"Q Was there any discussion at that time with respect to hospitalization and treatment for her?

"A Yes, Dr. Morris and Dr. Schoolman told me that they had a service plan out there and that they had talked · to—I don't know who they talked to out there at the hospital, whether it was someone over Dr. Glazier or Dr. Johnson, said they would be willing to accept the case,

because they had already looked in on the case when she was placed in there under him.

"Q Was there any discussion insofar as payment?

"MR. THOMPSON: Object to this as being hearsay upon hearsay.

"THE COURT: Overruled.

"Q (By Mr. Sullivan) Go ahead and testify.

"A They said they would accept her under this teacher's service plan that they have out there.

"Q What did you understand the teacher's service plan to

"Q Well, that—it was a ' service plan where a person—they was interested in my daughter's case so that doctor told me and they was going to place her under that and there would be no charges."

The issue presented to the jury on this evidence was the nature of the transaction between defendants and the plaintiff hospital. Was the transaction, as defendants contended, one in which their minor child was treated by the hospital as a part of its teaching services without hospital charges to the defendants? Or alternatively, under plaintiff's theory, was the child treated by the *physicians* without charge, charges of the hospital being subject to an agreement between the parties? Thus, the evidence of defendants concerning the statements made by Dr. Schoolman and Dr. Moss was critical on the basic issue the jury was called upon to decide.

■ The objection to the declarations of the doctors was that such testimony was "hearsay." The appellant must carry the burden of showing that such is in fact hearsay and that no exception or exclusion to the hearsay rule permits its admission. Put another way, if, even though hearsay, it is admissible under an exception or exclusion, the court cannot be in error in overruling. Goodman v. Allen Cab Co.,

360 Mo. 1094, 232 S.W.2d 535, Lindsey v. P. J. Hamill Transfer Company, Mo.App., 404 S.W.2d 397 (400).

We have not been favored with brief or argument by the respondent. Appellant vigorously urges reversal upon the ground of erroneous admission of the statements of Drs. Schoolman and Moss.

We are, therefore, confronted with the necessity of reviewing the action of the trial court without benefit of brief or argument to sustain his position; and in order to do so, we have considered the transcript carefully and have attempted to examine every possible basis upon which this evidence could have been admitted.

It occurs, first, that perhaps this evidence could be admitted because it was not subject to the hearsay rule by reason of what has been termed "exclusions" to the hearsay rule. We have considered these theories of admissibility, and only one appears to require discussion. This is the doctrine or theory of verbal acts.

■ The hearsay rule does not apply to "Utterances accompanying an *ambiguous or equivocal act*, itself *material*, and serving to complete the act and give it definite legal significance; i. e. *verbal parts of the act*." Wigmore on Evidence, Third Edition, Vol. VI, Sec. 1766, p. 180. This principle was clearly recognized in Missouri by the St. Louis Court of Appeals in Baker & Theodore, Inc. v. Quinn, 400 S.W.2d 477, l. c. 480, where the court ruled a declaration of a person not a party to the action admissible as a "verbal act * * * which explained or gave color to his conduct." In that case the conduct was relevant and material to the issue. The conduct was that of the *declarant*. It is important to note that under this exclusion the question of agency of the declarant does not arise. Nor is the availability of the declarant a factor in determining the admissibility of the statements. What is necessary is that the conduct out of which the verbal act arises be equivocal and germane to the issues of the case so that such conduct is relevant and material evidence. This being found, the verbal portion of the conduct which explains such *equivocal* conduct is admissible.

■ Defendants cannot sustain the admission of this evidence under this exclusion. They offered no evidence of equivocal conduct on the part of the doctors to make any verbal acts in connection therewith admissible. The evidence simply does not show any act or conduct on the part of the doctors which could be a part of the issues in this case. In this case, the conduct of the declarants, Drs. Moss and Schoolman, is not in issue. The statements admitted here are not a part of any act or conduct of the *declarants* material and relevant to the issues.

Being unable to find that this evidence is admissible as an exclusion from the hearsay rule, we consider next the question of its admissibility under any exception to that rule.

Viewing the entire record, only one such exception appears to offer any basis for its admissibility here. This is the exception of declarations by agents in the course and scope of their agency and authority.

■ These declarations are not admissible under any such theory unless the doctors were agents of the plaintiff authorized to act in the premises. The same would apply to any use of these statements as parts of a verbal contract between the plaintiff and defendants. Roush v. Alkire Truck Lines, Inc., Mo., 299 S.W.2d 518, l. c. 520, Gibbons v. Chomeau & Engelland, Inc., 240 Mo.App. 41, 210 S.W.2d 715, l. c. 718 [3].

How stands the evidence on the question of the agency of Drs. Schoolman and Moss? They were members of the staff of plaintiff and thus entitled to admit and treat their patients in plaintiff's hospital. They received no pay from plaintiff. They had no duties or obligations concern-

ing the making or collection of hospital charges. No evidence in the record demonstrates any other connection with the plaintiff. We cannot on this record hold that they were agents or in such privity or union of interest to make their declarations binding on the plaintiff. Our court has had held that the declarations of a doctor, employed by defendant, to make an examination of the plaintiff are not admissible against the interest of the defendant. This on the theory that his "agency" was confined to the examination, and he was given no authority to make admissions. Hughes v. Prudential Ins. Co., Mo.App., 179 S.W.2d 630, 1. c. 636.

There is no conduct or testimony in this record which would provide the basis for an estoppel operating against the plaintiff hospital to deny an agency relationship between the hospital and the Drs. Schoolman and Moss. Likewise, the record does not support by conduct or testimony any implication of agency or apparent authority of Drs. Schoolman and Moss which would make their statements admissible against the plaintiff hospital.

We have carefully considered every theory upon which the admission of this evidence could conceivably have been justified by the trial court and have reviewed the transcript with care. We conclude they should not have been received.

■ The statements attributed to the Drs. Schoolman and Moss are so central to the issues in this case that the prejudicial effect of the admission in evidence over the objection of plaintiff must be found. What was said in Scherffius v. Orr, Mo. App., 442 S.W.2d 120, 1. c. 127: "The hearsay was employed as independent proof of two principal, most vital issues in the case; it was 'not merely cumulative evidence but corroborative evidence.'" applies here with equal force.

Defense of this suit was predicated upon plaintiff's agreement not to charge. The institution's and defendants' arguments to the jury were directed to this specific issue. This objectionable evidence afforded the only substantial basis for this defense. We hold its admission over objection was error.

Our ruling on this point being decisive of the disposition of this appeal, we do not consider the point raised with respect to the instruction since the parties may consider the propriety of the instruction given before submitting the cause again.

Reversed and remanded for a new trial.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of DIXON, C., is adopted as the opinion of the Court.

All concur.