**Mary and Leroy STEPHEN, Appellants,**

v.

**LINDELL HOSPITAL, Respondent.**

No. 48119.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 20, 1984.

James William Herron, St. Louis, for appellants.

Kemper R. Coffelt, Clayton, for respondent.

CRANDALL, Judge.

Plaintiffs Mary and Leroy Stephen appeal from a judgment, entered on a jury verdict, in favor of defendant Lindell Hospital on Mary Stephen's claim of medical malpractice and Leroy Stephen's claim for loss of consortium. On appeal, plaintiffs claim trial court error (1) in excluding testimony by Mary Stephen about the conversation between two nurses which supported Mary Stephen's claim that she had been served breakfast on the morning of her surgery; (2) in excluding testimony of Mary Stephen that when she regained consciousness after surgery she told her doctor she had eaten breakfast on the morning of the surgery; and (3) in giving double converse instructions to the jury; and further, that the converse instruction to plaintiff Leroy Stephen's claim was not in substantially the same language as the verdict director. Defendant raises the issue of submissibility in its brief. We affirm.

Mary Stephen entered Lindell Hospital in March 1978 for surgery on her right foot. The hospital had a rule that patients scheduled to undergo surgery with a general anesthetic were not to be fed anything for at least six hours prior to the surgery. Mary Stephen testified she was served breakfast on the morning of surgery between 5:00 and 6:00 a.m. At about 7:30 a.m. she was taken off to surgery.

Mary Stephen was given a general anesthetic prior to surgery. After the operation she was taken to the recovery room where she regurgitated and aspirated the material into her lungs. Dr. Robert Bolton testified that he found particles of partially digested food that had been inhaled into the lungs. Mary Stephen suffered lung-related problems after the surgery.

A medical expert testified that two or three patients in ten will vomit due to a general anesthetic regardless of whether the patient had eaten shortly before surgery. The expert stated that nine patients in ten vomit if they have eaten shortly before surgery. A crucial issue then at trial was whether Mary Stephen had been served breakfast the morning of her surgery.

Plaintiffs first claim the trial court should have admitted testimony offered at trial from Mary Stephen that after she had eaten breakfast on the morning of the surgery, she overheard a conversation between two uniformed nurses standing in the hallway outside her door. Mary Stephen would have testified that one nurse said, "Didn't she have breakfast?," and that the other replied, "We'll take a chance."

Plaintiffs offered this testimony at trial under two theories, res gestae and admission by party opponent. On appeal, plaintiffs rely primarily on the res gestae theory and abandon the admission theory.

The use of the term "res gestae" has been criticized as being unsound and harmful. *Meyers v. Smith,* 300 S.W.2d 474, 477 (Mo.1957); *Walsh v. Table Rock Asphalt Construction Co.,* 522 S.W.2d 116, 120 (Mo.App.1975). However, there are at least two different kinds of statements which are received in evidence under the designation res gestae. *Hamilton v. Missouri Petroleum Products Co.,* 438 S.W.2d

197, 199–200 (Mo.1969). One type is known as spontaneous utterance, which is not the theory applicable here. The other type is known as a verbal act, which is actually a part of the transaction under consideration and is considered not to be hearsay.

Further defining this rule is *State v. McClure*, 504 S.W.2d 664, 671 (Mo.App. 1974): "It has become a well settled principle of the law of evidence that statements or declarations made contemporaneously with or immediately preparatory to a particular litigated act which tend to explain, illustrate or show the object or motive for the act, are properly admissible into evidence as a part of the res gestae." In that case, the verbal acts constituted a part of a crime of aiding, abetting and assisting another in the sale of a controlled substance.

■ The verbal act rule applies "only when such statements are not offered as evidence of the fact stated, but are offered 'irrespective of the truth of any assertion they may contain.'" *State v. Schuh*, 497 S.W.2d 136, 138 (Mo.1973). The verbal act must be used to explain conduct that is equivocal. *Menorah Medical Center v. Davis*, 463 S.W.2d 618, 621 (Mo.App.1971).

■ The statements Mary Stephen says were made by the two unidentified nurses do not meet the verbal act test. The statements of the nurses were offered first to prove that Mary Stephen had breakfast and that she was still being sent to surgery. Secondly, the statements were offered to show breakfast was being served on the floor prior to the time Mary Stephen was taken to surgery. In both cases the statements would be used for the truth of the matter asserted; namely, that breakfast was served or that the nurses would risk sending her to surgery. The statements do not meet the verbal act test for that reason. "Calling an assertion 'a part of the transaction' cannot make it any the less hearsay testimony, when it is used assertively and testimonially, no matter how 'inseparable from' or 'intimately interwoven with' the affair it may be." VI Wigmore, Evidence § 1757 (Chadbourn rev. 1976).

Further there was no equivocal conduct to be explained by the statements.

Plaintiffs also seem to allege, by citing to *Ferrell v. Topp*, 386 S.W.2d 33, 37 (Mo. 1964), that the statements should be admitted because they show knowledge of a dangerous condition, and thus do not constitute hearsay because they are not being used to prove the truth of the matter asserted. In *Ferrell*, a pilot was told there was rough country along his flight path and that he would have to be careful. The pilot responded that if the mountains were too high he "would just knock a hole in one of them." The pilot's statement was admitted to show he knowingly chose a dangerous route, and not for the truth of the matter asserted. But that claim was based on willful and wanton misconduct, so knowledge was material.

Likewise, in *Rinker v. Ford Motor Co.*, 567 S.W.2d 655 (Mo.App.1978), the court's holding that prior reports of defects in a certain make of automobile should have been admitted at trial to show knowledge of a hazardous condition, related to a claim based on negligent failure to warn. That claim required a showing under then MAI No. 31.01 (now MAI No. 25.06) that the plaintiff did not know and by using ordinary care could not have known of the defect.

■ The present case is not the same. Here knowledge was not an essential element. The jury was instructed to decide only if Mary Stephen was served breakfast and if the defendant was negligent. It is immaterial whether any nurses knew or should have known she had breakfast prior to being taken to surgery. Plaintiffs would have been able to recover without any evidence that any nurses were aware she had eaten. The court was within its broad discretion in excluding this hearsay testimony. Plaintiffs' first point is denied.

Plaintiffs next contend that the trial court erroneously excluded the offered testimony of Mary Stephen that, immediately upon regaining consciousness after surgery, she stated, "I feel sick, must have been the breakfast." Plaintiffs argue this

hearsay testimony should have been admitted as a spontaneous utterance, an exception to the hearsay rule and included in the vague term "res gestae." *Hamilton v. Missouri Petroleum Products Co.,* 438 S.W.2d at 199–200.

The test for admitting a spontaneous utterance was stated by this court in *State v. Rogers,* 585 S.W.2d 498, 504–505 (Mo.App. 1979):

> It is generally held that spontaneous exclamations and statements uttered contemporaneously with or shortly after an unusual occurrence, usually the crime involved, by a person who is still under the influence of its effects are admissible into evidence. The rationale of this exception to the hearsay rule is that where the statement is made under the immediate and uncontrolled domination of the senses as a result of the shock produced by the event, the utterance may be taken as expressing the true belief of the declarant. Under this exception the statement need not be strictly contemporaneous with the act described. The test of the admissibility of a spontaneous statement is not when the statement was made, but whether under all the circumstances, the speaker may be considered as speaking under the stress of the nervous excitement produced by the event, or whether that excitement had died away. 22A C.J.S. Criminal Law § 662(3) (1961) at 671. The essential test of whether a hearsay statement is admissible as a spontaneous statement is neither the time nor place of its utterance but whether the utterance was made under circumstances which indicate that it is trustworthy. The burden is on one offering the declaration to prove the facts which warrant its admission.

Further, the utterance should not be merely a reflective narration of past events nor constitute an expression of an opinion. *Walsh v. Table Rock Asphalt Construction Co.,* 522 S.W.2d at 121.

■ The trial court could have found Mary Stephen's statement inadmissible for several reasons. First, her daughter testi-fied she had told her mother on the morning of the surgery that she should not have eaten breakfast. This was after her mother had stated she had eaten breakfast. The daughter made this comment at least several minutes prior to Mary Stephen being taken away for surgery. This indicates Mary Stephen had time to ponder the possible effects of having eaten prior to surgery. Thus, it could be found that the statement was not produced by the event itself, but rather by reflection on past events.

■ In addition, the post-surgery statement that it "must have been the breakfast" would not qualify under the spontaneous utterance rule because it was an expression of opinion or conclusion. It constituted "a preexisting reasoned reflection and conscious analysis on the part of the speaker which is the antithesis of a true spontaneous exclamation." *Walsh v. Table Rock Asphalt Construction Co.,* 522 S.W.2d at 123. We hold that the court did not abuse its broad discretion in excluding this testimony. Plaintiffs' second point is denied.

Plaintiffs' third point deals with instructions. They claim that Instruction No. 13, a converse instruction, does not properly converse plaintiff Leroy Stephen's verdict director (Instruction No. 12) in substantially the same language. The instructions here read:

*Instruction No. 12*

Your verdict must be for plaintiff Leroy Stephen if you believe:

First, defendant served breakfast to plaintiff Leroy Stephen's wife within six hours of surgery to be performed under a general anesthetic, and

Second, defendant was thereby negligent, and

Third, as a direct result of such negligence, plaintiff Leroy Stephen's wife was *injured* and plaintiff Leroy Stephen thereby sustained damage.

*Instruction No. 13*

Your verdict must be for defendant unless you believe defendant was negligent and as a direct result of such negligence plaintiff Mary Stephen *sustained damage.* (Emphasis added.)

■ We need not address the issue of the language of Instruction No. 13. The jury found in favor of defendant on plaintiff Mary Stephen's claim. Plaintiff Leroy Stephen is therefore barred as a matter of law from recovery because of the derivative nature of his action. *Burrow v. Moyer,* 519 S.W.2d 568, 572 (Mo.App.1975). Any error in his converse instruction is therefore moot.

Plaintiffs also claim that Instructions 13 and 9 both converse Instruction No. 8 (wife's verdict director), and that it is error to give two converse instructions conversing the same elements of the plaintiffs' claim. The cases cited by plaintiffs are inapposite because they were decided prior to implementation of the "packaging" concept of instructing juries. MAI No. 2.00, Explanatory Comment.

The MAI explanation on packaging states:

It will be up to the trial judge to determine the basis for 'packaging' of a complex case so that the overall instructions will present the case to the jury in a manner which will best allow them to consider all of the issues in the case in an organized, understandable, and comprehensible manner. In most instances, the case should be packaged so that the claim for damages of each party asserting a claim for damages will be covered by a separate package. MAI No. 2.00 at 21.

The explanation adds: "Packaging is not intended to be a rigid set of rules." MAI No. 2.00 at 24.

The MAI explanation gives as an example a case where a plaintiff's wife brings a claim for loss of consortium, along with the husband's claim in a personal injury case. The explanation states:

[T]his would be a separate claim and would be included in a second package. Since plaintiff [husband's] contributory negligence would also bar his wife's claim for consortium, similar contributory negligence instructions will be included in both packages. *This is necessary so that each claim will contain all of the instructions, except the general instructions, which are necessary for the complete submission of that particular claim.* MAI No. 2.00 at 21–22.

■ By analogy, because the husband's claim in the present case is derivative and thus depends on the finding by the jury of his wife's claim, the converse given for the wife's verdict director could be used again in the husband's package "so that each claim will contain all of the instructions ... which are necessary for the complete submission of that particular claim." Defendant's third and final point is denied.

In view of our holding, we need not discuss the issue of submissibility raised by defendant.

The judgment of the trial court is affirmed.

DOWD, P.J., and CRIST, J., concur.