# MATTIE ROOKER (MORGAN), Respondent, v. DEERING SOUTHWESTERN RAILWAY COMPANY, Appellant.

### Springfield Court of Appeals, January 29, 1923.

1. **JURY: Allowing Juror to Remain on Panel Held Improper.** In a passenger's action for injuries, where on the *voir dire* examination of jurors, it appeared that one of them lived on the same farm as did plaintiff, and that plaintiff's husband, who subsequently married plaintiff, had talked to the juror about the case, and the juror admitted that he had formed some impressions about it, but stated that he could try the case and render a verdict free from any opinion, it was improper to permit such juror to remain on the panel.

2. **TRIAL: Argument of Plaintiff's Attorney Held Improper.** In a passenger's action against a railroad company for injuries sustained while alighting, through a sudden jerk of the train, argument by plaintiff's attorney in closing as to whether the conductor knew that plaintiff was going to get off at that station *held* improper; there being no charge in the petition that there was any negligence in such respect or in stopping the train.

3. **EVIDENCE: Testimony Admitted as Part of the Res Gestae.** In a passenger's action for injuries sustained through a sudden jerk of the train while she was standing on the platform and about to alight, evidence that a third person on the platform came into the car and announced "you have jerked a woman off of this car on her head" *held* admissible as part of the *res gestae*, as showing the fact that there was a jerk of the train.

4. **DAMAGES: Verdict Held Excessive.** Where it appeared that a passenger suing for injury fractured the tip of her shoulder blade, and claimed to have been permanently injured, but was at work a month after the injury, receiving about the same pay as before she was injured, *held*, that a verdict for $3000 should be reduced to $1500.

215 Mo. App.—31.

Appeal from the Circuit Court of Pemiscot County.—
*Hon. Sterling H. McCarty,* Judge.

AFFIRMED. (*on condition*).

*Ward & Reeves* for appellant.

(1)   Passenger who is in a safe place and leaves it
and goes to an unsafe place and occupies it without the
knowledge or consent of the defendant's employees and
by reason of assuming this dangerous position is injured,
cannot recover.   Carrol v. Railway, 107 Mo. 653; Tuley
v. Railway, 41 Mo. App. 432; Ashbrook v. Railway, 18
Mo. App. 290; Harris v. Railway, 89 Mo. 233; Ely v.
Railway, 141 Mo. App. 708.   (2)   Not the duty of rail-
road company to furnish someone to assist passengers
in alighting from trains.   Strauss v. Railway, 75 Mo.
190, 191; Hurt v. Railway, 94 Mo. 255, 263; Lafflin v.
Railway, 106 N. Y. 136; Deskins v. Railway, 151 Mo.
App. 432.   (3)   It was error to admit testimony of wit-
ness as part of *res gestae,* where it was not shown in evi-
dence that the witness saw plaintiff fall from the train.
3 Wigmore on Evidence, sec. 1751; State v. Brown, 64
Mo. 371; Koenig v. Railway, 173 Mo. 721; Barker v.
Railway Co., 126 Mo. 148-150.   (4)   Argument of plain-
tiff's attorney to jury was improper.   Hickman v. Light
and Power Co., 226 S. W. 570; Cameron v. Cameron, 162
Mo. App. 110; State v. Spiver, 191 Mo. 112.  (5)   The
verdict was excessive, and constitutes reversible error.
Lowder v. Railway, 221 S. W. 800.; Bragg v. Railway,
192 Mo. 365-366.

*Mayes & Gossom* for respondent.

(1)   Testimony of witness Chilton was properly ad-
mitted as part of the *res gestae,* as being a spontaneous
exclamation made at the time of the accident.   Leahey v.
Railway, 97 Mo. 165; State v. Kaiser, 124 Mo. 667; State

v. Walker, 78 Mo. 380; Kelly v. Railroad, 225 S. W. 133.
(2) The verdict was not excessive. Lowder v. Kansas
City Rys. Co., 221 S. W. 800; Pry v. Railroad, 73 Mo. 128;
Hays v. Railroad, 183 Mo. App. 608.

FARRINGTON, J.—The plaintiff in this suit recovered a judgment in the circuit court for $3000, the full amount sued for in the petition. Her cause of action is based on a petition alleging as the sole ground of negligence that the defendant railroad company, while carrying her as a passenger on one of its trains, negligently and carelessly operated its train with a sudden and unusual jerk which threw her from the train and to the ground while said train was in motion and while she was standing on the platform of the coach preparatory to alighting from the train at her station. This is the third appeal to this court; the judgment in the first appeal being disposed of in the case of Rooker v. Deering Southwestern Ry. Co., 204 S. W. 556, and the second appeal is reported in 226 S. W. 69. We refer to the two former opinions as the facts therein stated as to the principal points in evidence are the same as on this appeal.

A number of errors are alleged on this appeal, some of which were disposed of in the former opinions rendered in the case. We will not go into the question raised by the appellant on demurrer to the evidence other than to refer to the former opinions and state that there was a clear conflict of evidence on what the defendant did, and if plaintiff's version is true, there is liability to her for negligence. It is undisputed that she bought a ticket from Caruthersville to the station or switch of Blazer, the plaintiff living very near the latter place. Blazer, from the evidence, is the intersection of the plaintiff's tracks with what is described in the petition as the Frisco tracks in Pemiscot County. It is a railroad crossing where there are gates which are required to be opened by the operatives of defendant's trains before the crossing can be made. Plaintiff says that she was seated

in the coach and that the brakeman came through and called her station, Blazer; that the train slowed down and was running very slowly when she arose from her seat, went to the front of the car, out on the platform, took hold of the railing with her left hand, her right hand holding some bundles she was carrying. While standing there the train gave an unusual jerk which caused her to be thrown from this platform to the ground. She then testified as to her injuries, tending to show that she was permanently injured. In this connection, we will say that plaintiff was corroborated by no witness placed on the stand—and some of them being her own witnesses in former trials—as to the unusual jerk of this train that she says threw her off; however, that is a question of fact as to whether that took place, and the jury is the tribunal to make the correct finding in that respect.

The instructions on this trial complained of were practically the same as those in the trial on the last appeal, and we have no reason to change our opinion in respect to same.

Appellant's contention that plaintiff's main instruction charged grounds of negligence other than contained in the petition, is an incorrect charge. The instruction does not attempt to base a recovery on the ground that the train failed to stop at Blazer. It was a disputed question of fact whether the train did stop or did not stop, and the only ground that would justify the plaintiff in going out on the platform and remaining there at the time she was there, would be that the train had not stopped prior to crossing the Frisco tracks. There being evidence that the train at times stopped first on one side of the Frisco crossing and at other times on the other side was sufficient reason for plaintiff, if the train had not stopped on the east side of the tracks on the day this accident occurred to go to the front platform expecting it to stop on the west side, because she had a ticket calling for her to get off at Blazer; and in order for the jury to find for her, they must have found that

the train did not stop on the east side of the track, and that was testified to by the plaintiff. The instruction requires that they find that there was an unusual jerk, and that was the ground charged in the petition and is the only ground, when read in the light of the evidence, that is required in plaintiff's first instruction; and especially is this true when read in the light of defendant's instruction which explicitly told the jury they could not hold defendant liable for not stopping the train, but that liability was only based upon an unusual jerk.

There are some new phases in this trial which make us seriously doubt whether the trial this time was wholly free from partiality. To begin with, on the *voir dire* examination of jurors, it was shown that one of the number lived on the same farm plaintiff lived on and that her husband, who, by the way, became plaintiff's husband since the former trial in this cause, had talked to him about this case, and this juror admitted on examination that he had formed some impression about it before the trial, but stated that he could try the case and render a verdict free from any opinion that he had formed. Of course, this juryman was stricken from the list by the defendant but it was improper, to say the least, for the trial court to have permitted him to remain on the panel. Common knowledge and experience makes it almost impossible for two fellow workers, on the same farm, friendly with one another, to impartially try any issue wherein a fellow worker is suing a railroad company for personal injury.

Plaintiff's instruction on the measure of damages is one which has been criticised by the Supreme Court and yet has been held not to make reversible error in a trial. It told the jury that "If you find for the plaintiff, you will assess her damages at such sum (not exceeding $3000) as you may find from the evidence will fairly and reasonably compensate her," etc. This instruction is criticised in Stid v. Railway, 236 Mo. 405, 139 S. W. 172; Lessenden v. Railway, 238 Mo. 247, 142 S. W. 332; Ap-

plegate v. Railway, 252 Mo. 173, 158 S. W. 376; Kinney v. Met. Street Railway, 261 Mo. 97, 169 S. W. 23. In three of these cases the giving of this instruction, and other matters appearing in the trial, caused the Supreme Court to require a remittitur of the amount of damages recovered by the plaintiff; and in the other case the judgment was reversed on account of other grounds. The prejudicial character of this instruction, however, was particularly referred to by the Judge writing the opinion.

In this trial, and in the former trials, the plaintiff's evidence on the extent of injury sustained by her is not particularly impressive. Immediately after falling off the train she walked half a mile to where she was living, and on the next day she walked three and a half miles to town to consult a doctor. On one of the former trials she testified that she saw the doctor on that day, but on this trial admitted that she did not see him on that day, which day would be the 26th day of February, 1917, but that she either saw him in April or May of that year for the first time. She then testified she got some liniment from a negro that did her more good than anything else. Her doctor, on a former trial, whose evidence was introduced at this trial, did testify that she had a fracture of the tip of her shoulder blade. It is shown that she was a nurse, and that she had within no longer than a month after the injury gone to work, receiving about the same pay she had received prior to the date of her injury.

On the first trial of this cause the jury found for the defendant. We reversed the cause on account of an erroneous instruction asked by the defendant and given by the court. On the second trial the jury awarded her $800, and error was contained in that trial, causing a reversal of the judgment. On this trial the jury gave the full amount asked for in the petition, to-wit, $3000. We do not think the evidence will warrant a verdict of this size.

Complaint is also made by appellant of the argument made by one of plaintiff's attorneys in closing the case. We have read the record concerning the statements made by the attorney and agree with appellant that the attorney was unfair in arguing the question, whether the conductor knew that the plaintiff was going to get off at this station. There is no charge in the petition that there was any neglect in that respect, or any neglect in stopping the train. The sole ground relied upon for recovery in this case was an unusual jerk of that train, which caused plaintiff to fall off the platform, Merely because it was competent to show this in order to show where the conductor and train operatives were, did not justify the attack made, which would mislead the jury in believing that plaintiff was being neglected because the conductor was in the front coach making up his tickets, and admitted on the stand that he did not know whether the plaintiff was to get off at this station.

Appellant contends that it was error to admit evidence that some one on the platform with the plaintiff, at the time she fell off, came immediately into the car and announced that "you have jerked a woman off of this car on her head." The question of whether testimony such as this is a part of the *res gestae* is always a vexing one; however, under the authorities cited by the appellant we believe that the announcement made by one who was on the platform where he could have seen her fall off, and made it known immediately thereafter to those in the car, was so closely related to the main transaction as to be in the nature of an exclamation and in fact a part of the transaction, and that to admit it for the purpose of showing on the main issue that there was a jerk of the train, was competent. In this connection we may say that there is no testimony that any of the train crew saw her fall off, but they were immediately notified of the fact and backed the train up to where she had fallen and the conductor went back and caught up with her going down the track and talked to her about it. We,

therefore, hold that it was not error to admit this testimony.

We are of the opinion that plaintiff's testimony made out a case of negligence which caused an injury to her, and that the jury was justified in so finding, but we are of the opinion that the jury were unduly influenced through the argument of counsel and the giving of the instruction on the measure of damages in giving a larger verdict to plaintiff than the evidence justified. Had they allowed a sum not exceeding $1500, we would not feel justified in interfering with it, but allowing a sum twice that amount, we feel that the interest of justice requires that it be reduced. This judgment, therefore, will be affirmed provided plaintiff will, within ten days from the handing down of this opinion, remit the sum of $1500, otherwise the judgment will be reversed and the cause remanded. *Cox, P. J.,* and *Bradley, J.,* concur.