David Robert WALSH, a minor, by his next friend, Robert L. Walsh, Plaintiff-Appellant,

v.

TABLE ROCK ASPHALT CONSTRUCTION CO., a corporation, et al., Defendants-Respondents.

No. 9679.

Missouri Court of Appeals, Springfield District.

April 3, 1975.

Donald E. Bonacker, Springfield, Robert S. Wiley, Crane, for plaintiff-appellant.

Clay Cantwell, Cantwell & Allman, Branson, Harold J. Fisher, David W. Ansley, Woolsey, Fisher, Clark, Whiteaker & Stenger, Springfield, for defendants-respondents.

Before BILLINGS, C. J., and TITUS and FLANIGAN, JJ.

TITUS, Judge.

██ A loaded southbound dump truck owned by defendant Table Rock Asphalt Construction Co. (Table Rock) and driven by its employee, Donald Lee Hale, and a northbound automobile operated by the 17-year-old plaintiff collided head-on at a curve on Highway 13 in Stone County, Missouri. The impact occurred in front of the residence of Mrs. Merle Peterson which is located about four miles south of Reeds Spring and five miles north of Kimberling City.[1] Injuries received by Hale caused his death eight hours after the accident. Plaintiff (by his next friend) sued Table Rock for personal injury damages. Following the addition of Hale's widow and minor children as parties defendant, the defendants counterclaimed for damages resulting from Hale's death. Defendants' combined counterclaim coupled Table Rock's subrogation rights under the workmen's compensation law (§ 287.150 RSMo 1969, V.A.M.S.) with the rights of Hale's widow and children for wrongful death as provided by § 537.080 et seq. RSMo 1969, V.A.M.S., effective on December 11, 1969, the date of the involved casualty. In a separate count, Table Rock counterclaimed for damages to its truck. Solution of liability in the cause reposed in determining which vehicle was on the wrong side of the road at the time of impact. The jury resolved this issue in favor of defendants who were awarded $50,000 for Hale's wrongful death; Table Rock's property damages were assessed at $5,500. Plaintiff appealed when his motion for judgment notwithstanding the verdict or for new trial was overruled.

The initial three points relied on by plaintiff upon this appeal relate to whether the trial court erred vel non in permitting defendants' witnesses to recount statements allegedly made by Hale at the accident scene. The statements, used testimonially

---

1. We judicially notice the geographical location of cities in the state and that the distance between Reeds Spring and Kimberling City is approximately nine miles. Griffin v. Doss, 411 S.W.2d 649, 651 (Mo.App.1967).

by defendants, i. e., as utterances to evidence the truth of the matters asserted, were permitted in spite of some admitted trepidation on the part of the court nisi under what is rightly or wrongly termed in the texts and opinions as the *res gestae.*

Mrs. Peterson testified she was seated in the living room of her home "at about 3:20 in the afternoon" when she heard the crash, jumped up and ran to the front porch. She saw the involved vehicles and the fact that the dump truck had upset in the east ditch across the road from her house and was burning. By the time she crossed the highway, two men were approaching the truck from a nearby house and they pulled Hale "out of the fire." According to Mrs. Peterson it "looked like [Hale's] clothing was all afire. . . . He was moaning from pain and he never spoke a word while I was there." Mrs. Peterson returned home to telephone for help and to get a blanket for covering Hale. She gave the blanket to Ronnie Rogers in her front room an estimated five to ten minutes after she heard the collision.

Wayne Jones was following Hale at a distance of about one mile. Behind him another mile and also driving a loaded dump truck was Ronnie Rogers. At the same time these two loaded trucks were southbound from Reeds Spring to Kimberling City, an empty dump truck was being driven northward by Lonnie Dean towards Reeds Spring for reloading. Coy Blevins, Table Rock's asphalt foreman, was at a motel in Kimberling City supervising the unloading of the dump trucks at that site. None of these men witnessed the accident.

Rogers estimated he arrived at the scene near 3:30 p. m., and that about ten minutes elapsed from the time of his arrival until he placed the blanket over Hale. It was while Rogers was taking the blanket to Hale that he saw Lonnie Dean "go down

there to Hale," or, as Dean recounted, when he arrived "I saw Ronnie Rogers comin' up the ditch line or at the bottom of the embankment with a blanket." Jones stated that he believed he was at the accident scene ahead of Lonnie Dean and that Coy Blevins came to the scene "ten, fifteen minutes afer I arrived."

Dean testified that within "[f]ifteen to 20 seconds, I guess," after he arrived, he knelt down beside Hale. He observed that all of Hale's "clothes were burned off of him, and he was black, like charcoal. And all of the hair was burned off of his body and the only thing he had on was a pair of insulated boots . . . . Entirely burned up, flesh— black flesh hanging in layers." About 30 seconds after he knelt beside Hale, Dean stated that Hale "said that he was scared he was goin' to swallow his tongue . . . then in just a little bit, I guess, he had got his tongue under control . . . and he said that she was goin' too fast to make the curve and lost control of the car and that he tried to get out of the way but couldn't." When asked to relate what he observed "in regard to whether or not [Hale] was excited," Dean answered: "He was excited about his tongue, but for a person in that condition he was calm." [2]

The statement which Wayne Jones heard Hale make was directed to Coy Blevins and, of course, was made after Blevins had arrived at the scene. By Jones' account, when the statement was made, Hale "didn't seem to be excited to me" and he said "Coy, I did all I could do and then they hit me." Whether Jones and Blevins in their testimony undertook to repeat the same statement made by Hale is unclear. In any event, the testimony of Blevins was that Hale "just told me the car came around on his side of the road and he couldn't get out of the way, and he was sorry."

---

2. Before the witnesses testified concerning the statements allegedly made by Hale, an in-camera hearing was held to determine the admissibility of that testimony. In that hearing Dean, in describing Hale's condition, stated: "Well, he was calm . . . I mean it was like he wasn't even injured, was the type calm that he was."

The statements reportedly made by Hale and repeated to the trial court and jury by witnesses Dean, Jones and Blevins, were said to have been uttered by Hale without his being questioned concerning the matter. The statements were admitted over numerous objections by plaintiff. Objections were made to all of the testimony concerning the statements because they were hearsay, were not made while Hale was excited, were not made immediately after the event before reflection, showed that Hale had reflected on facts and reached conclusions, and were opinions and conclusions of Hale and not statements of facts. The statements testified to by Dean and Blevins were additionally objected to because they were not in the exact words of Hale, and statements repeated by Jones and Blevins were also objectionable to plaintiff as they were not made spontaneously after the event.

Professor Wigmore (VI Wigmore on Evidence, 3rd Ed., § 1767, at p. 182) opines that the "phrase 'res gestae' has long been not only entirely useless, but even positively harmful. It is useless, because every rule of Evidence to which it has ever been applied exists as a part of some other well-established principle and can be explained in the terms of that principle. It is harmful, because by its ambiguity it invites the confusion of one rule with another and thus creates uncertainty as to the limitations of both. It ought therefore wholly to be repudiated, as a vicious element in our legal phraseology. No rule of Evidence can be created or applied by the mere uttering of a shibboleth. There are words enough to describe the rules of Evidence. Even if there were no accepted name for one or another doctrine, any name would be preferable to an empty phrase so encouraging to looseness of thinking and uncertainty of decision." And Judge Barrett, author of Meyers v. Smith, 300 S.W.2d 474 (Mo.1957), wrote (l. c. 477): ". . . the distinguished legal scholars have repeatedly pointed out, with complete unanimity, the fallacies and unsoundness of res gestae as a rule of evidence, or as an exception to the hearsay rule which excludes proof of 'extrajudicial utterances (only) when offered for a special purpose, namely, *as assertions to evidence the truth of the matter asserted.'* . . . Nevertheless, Missouri's bench and bar, with rare notable exceptions . . . instead of candidly recognizing certain contemporaneous or spontaneous exclamations and utterances as a legitimate and basically sound exception to the hearsay rule . . . have stubbornly clung to the shibboleth of the meaningless Latin phrase. . . . But even the most convincing apologist for the [res gestae] doctrine is unable to reconcile even the leading Missouri cases, and vehemently objects to our attempts to combine Professor Wigmore's 'shock test' with res gestae, particularly in connection with post-accident utterances. Annotation 163 A.L.R. loc. cit. 52–53, 90, 140, 156."

The password suggested by Professor Wigmore to gain testimonial entrance past the hearsay rule in cases of this character is "Spontaneous Exclamations." This exception to the hearsay rule "is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts." VI Wigmore on Evidence, supra, § 1747(I), at p. 135.

In refinement or adulteration of the foregoing (depending on the point of view) Missouri courts enounce that in considering the admissibility of a statement under the spontaneous exclamations exception (or the res gestae exception as it is more often called), the utterance should be regarded as presumably inadmissible because of the rule against hearsay [McKenzie Transport Leas. Co. v. St. Louis Pub. Serv. Co., 349 S.W.2d 370, 373[3] (Mo.App.1961)], and the burden of making a sufficient showing of spontaneity to render the statement admissible is on the party who offers it. Woods v. Southern Ry. Co., 73 S.W.2d 374, 377[2] (Mo.1934). The essential test applied to this class of statements is spontaneity. Hamilton v. Missouri Petroleum Products Co., 438 S.W.2d 197, 200 (Mo.1969). In testing for spontaneity, the mere fact that the utterance comes a very short time after the accident does not per se make it admissible [Wren v. St. Louis Public Service Company, 333 S.W.2d 92, 95[2] (Mo.1960)], and the amount of time which elapses is mainly material as evidence of the lack of spontaneity. Monical v. Armour and Company, 307 S.W.2d 389, 392[3] (Mo.1957). The declaration, however, need not be coincidental in point of time with the main fact and it is sufficient if the two are so closely connected that the utterance can be said to be the spontaneous exclamation of the real cause. Leahey v. Cass Ave. & F. G. Ry. Co., 97 Mo. 165, 172, 10 S.W. 58, 60 (1888). The true test is said to be neither the place nor the time of the utterance but whether it is a spontaneous exclamation produced by the exciting cause. Gough v. General Box Co., 302 S.W.2d 884, 889 (Mo.1957). Nevertheless, expressions of opinion are not generally admissible as part of the exception although they be accompanied by acts demonstrating declarant really entertained the opinion so expressed [Wiedanz v. May Department Stores Co., 156 S.W.2d 44, 49[10, 11] (Mo.App.1941)], and some other limitations placed upon the exception "are that a statement, to be admissible, must neither be a mere reflective narration of past events . . . nor an opinion, nor conclusion of fact reached by reasoning from other facts." Sconce v. Jones, 343 Mo. 362, 370, 121 S.W.2d 777, 781–782[4] (1938). "However, 'spontaneity' hinges, not upon a determination of whether the declarant *in fact* did reflect or whether *in fact* his statement was prompted by self-interest, but upon whether the statement was 'produced by the event itself.'" Cummings v. Illinois Cent. R. Co., 364 Mo. 868, 879, 269 S.W.2d 111, 119 (1954). Though rarely noted by the courts, necessity is not universally recognized as an essential element of the exception. VI Wigmore on Evidence, supra, § 1748, pp. 138–139. But where the declarant is an injured participant and dead at time of trial, a liberal application has sometimes resulted as evidenced by Johnson v. Southern Ry. Co., 351 Mo. 1110, 175 S.W.2d 802 (1943), which was criticized in 163 A.L.R., at p. 156. If the statement qualifies as a spontaneous exclamation (or constitutes a part of the res gestae), the fact it is self-serving does not make it inadmissible for its admission is predicated upon its trustworthiness arising out of the occasion of its utterance. Bennette v. Hader, 337 Mo. 977, 983, 87 S.W.2d 413, 416[5] (1935).

In reference to the so-called res gestae doctrine in general, defendants cite us to many cases repeating the well-worn phrases that whether a statement is admissible under the exception depends upon the particular facts in each case; whether the statement under those circumstances is admissible reposes within the trial court's discretion; and an appellate court will not reverse the trial court's ruling unless it appears the discretion was abused. E. g., Cummings v. Illinois Cent. R. Co., supra, 364 Mo. at 877, 269 S.W.2d at 117[9–11]. Apropos of these clichés, it is well to reconsult Meyers v. Smith, supra, 300 S.W.2d at 477: "But as the exponents of the rule have pointed out, particularly with respect to Missouri, such statements as 'admissibility will be left in large measure to the discretion of the trial court' are but

empty, hollow phrases. 'No reliance can be placed on these decisions further than to say that the court can, if it wishes to, review the ruling without any concession to the trial court, but, if it wishes to, may review it cursorily and refer to the judge's discretion as a convenient resort, or a makeweight, or as a deciding factor where the evidence is obscure.' 163 A.L.R., loc. cit. 94. It is the annotator's position that the trial judge is not the final arbiter, that whether evidence is admissible as res gestae is a question of law which the appellate court may and should pass on as it does any other mixed question of law and fact. Likewise, the annotator is critical of the so-called rule, which he stigmatizes as an 'apology,' that 'each case rests on its own peculiar circumstances.' 163 A.L.R. loc. cit. 184."

The statements of Hale as testified to by Messrs. Dean, Jones and Blevins were hearsay. They were post-accident statements used affirmatively as independent proof of the principal if not the only fact in issue, i. e., which vehicle was on the wrong side of the curve at the time of impact. So employed, the statements were not merely cumulative evidence but corroborative evidence [Hayes v. Kansas City Southern Ry. Co., 260 S.W.2d 491, 495 (Mo. 1953)] which would be prejudicial to plaintiff (Meyers v. Smith, supra, 300 S. W.2d at 480) if they did not qualify under the spontaneous exclamations exception to the hearsay rule.

Collectively viewing the time-testimony of Mrs. Peterson, Rogers, Dean, Jones and Blevins, it would appear the statement allegedly made by Hale to Dean was spoken from 5 to 20 minutes after the collision, and that the statements reported by Jones and Blevins were uttered at least 15 to 35 minutes after the casualty. There is no evidence that Hale had made any statements before he spoke to Dean. During the 5 to 20 minutes that elapsed between the crash and the statement made to Dean, Hale was suffering from intense burns over most of his body, his hair and his clothing had been "burned off of him" and he ".was scared he was goin' to swallow his tongue." Within "just a little bit" after he had gotten his tongue under control, Hale told Dean "she was goin' too fast to make the curve and lost control of the car and that he tried to get out of the way but couldn't."

■ Solely upon consideration of the time that elasped between the impact and Hale's utterance to Dean, we would be inclined to agree with the apparent holding of the trial court that the statement was a spontaneous exclamation. Some of the actual time that elapsed between the accident and the declaration was excitedly consumed in Hale's being extracted from the fire and his concern about swallowing his tongue. Also, during some of that interval Hale was experiencing the initial shock effects of the casualty and his injuries which would serve to temporarily still reflective faculties and ability to speak.[3] However, the opinions and conclusionary character of Hale's statement (which we will discuss anon) lead us to the belief that the trial court erred in admitting the statement into evidence. Some opinions, as written, suggest a statement may qualify as a spontaneous exclamation but should, nonetheless, be excluded on the separate consideration that it consists of an expression of an opinion or a "conclusion of fact reached by reasoning from other facts." Nevertheless, since an opinion is the drawing of inferences from known or assumed facts through the use of reasoning [Webster's New World Dictionary of the American

3. Cf. Huston v. Hanson, 353 S.W.2d 577, 580[1] (Mo.1962); Cummings v. Illinois Cent. R. Co., 364 Mo. 868, 877, 269 S.W.2d 111, 118 (1954) (first statement); Roach v. Kansas City Public Service Co., 141 S.W.2d 800, 804[10] (Mo.1940); Conley v. Berberich, 300 S.W.2d 844, 849–850[9, 10] [11] (Mo. App.1957); Sullivan v. Kansas City Public Service Co., 241 Mo.App. 56, 66, 231 S.W.2d 822, 826 (1950); Rooker v. Deering S. W. Ry. Co., 215 Mo.App. 481, 487–488, 247 S.W. 1016, 1018–1019 (1923); Giles v. Missouri Pac. Ry. Co., 169 Mo.App. 24, 34–35, 154 S.W. 852, 856 (1913).

Language, College Ed., p. 1211; Wright v. Order of United Commercial Travelers, 188 Mo.App. 457, 464[5], 174 S.W. 833, 835[6] (1915)] and a conclusion is a "reasoned judgment," [Webster's New Collegiate Dictionary (8th Ed.), p. 234], the fact the statement constitutes an opinion or conclusion attests to a preexisting reasoned reflection and conscious analysis on the part of the speaker which is the antithesis of a true spontaneous exclamation.

■ Hale's statement or statements to Blevins, as recounted by Jones and Blevins, were not in our view spontaneous exclamations. They were made at least 15 to 35 minutes after the accident, which was several minutes after Hale's declaration to Dean and subsequent to the time Hale had overcome his excitement about swallowing his tongue. He had become "calm . . . like he wasn't even injured [and] didn't seem to be excited." The totality of the circumstances surrounding the statements directed to Blevins, especially when they should be regarded as presumably inadmissible because of the hearsay rule, negate the idea they were made under the immediate and uncontrolled dominion of the senses and during the time when consideration of self-interest could not have been brought to bear through reflection or premeditation. Moreover, the initial reason for the utterances (i. e., the accident and resulting shock) and the statements were not so closely connected in point of time so as to be said to be spontaneous explanations of the real cause. In addition, structural differences between the statement allegedly first made to Dean and those thereafter directed to Blevins, illustrate a refinement in the latter utterances produced through reflection, reasoning and cogitation.[4]

■ The pronouncement that utterances are not admissible under the res gestae if they are expressions of opinions or conclusions of fact reached by reasoning from other facts, is analogous to that which excludes testimony of in-court witnesses which expresses only suppositions, conclusions or opinions as to facts. Although res gestae utterances are not generally required to correspond with formal testimony in court, the statements should show that the speaker is disclosing facts observed by him as opposed to opinions, conclusions and suppositions. Moore v. St. Louis Public Service Co., 251 S.W.2d 38, 40[3] (Mo.1952); Sconce v. Jones, supra, 343 Mo. at 370, 121 S.W.2d at 781–782[4]; McKenzie Transport Leas. Co. v. St. Louis Pub. Serv. Co., supra, 349 S.W.2d at 373; Wiedanz v. May Department Stores Co., supra, 156 S.W.2d at 49[10, 11]; 31A C.J. S. Evidence § 421, pp. 1038–1039. Considerable confusion on this subject is engendered through false analogy. Examination of many cases which simply hold the statements admissible as part of the res gestae do so in the absence of considerations and objections that they were opinions or conclusions [e. g., Huston v. Hanson, supra n. 3, 353 S.W.2d at 579–580; Giles v. Missouri Pac. Ry. Co., supra n. 3, 154 S.W. at 855–856; Sculley v. Rolwing, 88 S.W.2d 394, 398 (Mo.App.1935); Campbell v. Gladden, 383 Pa. 144, 118 A.2d 133, 135[2] [3, 4] (1955)], while others refer to res gestae when the statements should really be excluded at utterances concerning agency or outside its scope [Atkinson v. American School of Osteopathy, 240 Mo. 338, 355[3], 144 S.W. 816, 821–822[6] (1912); Renfro v. Central Coal & Coke Co., 223 Mo.App. 1219, 1227–1228[4], 19 S.W.2d 766, 770[4] (1929)], or are self-inculpatory statements by a party which are

4. Cf. Alberty v. Sunshine Biscuit Company, 321 S.W.2d 418, 422–423[4] (Mo.1959); Cummings v. Illinois Cent. R. Co., supra n. 3, 269 S.W.2d at 119 (statement subsequent to first); Sconce v. Jones, 343 Mo. 362, 371, 121 S.W.2d 777, 782[6] (1938); Leahey v. Cass Ave. & F. G. Ry. Co., 97 Mo. 165, 173, 10 S.W. 58, 60–61 (1888) (statements subsequent to first); Vaughan v. St. Louis & S. F. R. Co., 177 Mo.App. 155, 175–176, 164 S.W. 144, 151 (1914) (statements subsequent to first).

admissible as declarations against interest. E. g., Costello v. M. C. Slater, Inc., 220 S. W.2d 947, 953[7, 8] (Mo.App.1949).

The investigating highway patrolman described the asphalt surface of the curve at the accident site as being "wet" when the impact occurred. An assertion that a vehicle's speed is "'fast' . . . is a relative term and hardly a statement of a fact" [Migneco v. Eckenfels, 397 S.W.2d 682, 686[6] (Mo.1965)], while describing the speed as "'awful fast' . . . was in the nature of a conclusion . . . and indefinite in its character" [Morgan v. Maunders, 37 S.W.2d 791, 793[1] (Tex. Civ.App.1930)], and "'going too fast . . . was a mere opinion or conclusion." Whitney v. Sioux City, 172 Iowa 336, 154 N.W. 497, 498[1, 2] (1915). Consequently, when Hale concluded "she was goin' too fast," compounded with "to make the curve," he was expressing an opinion based on reasoning that the event, if so, was not due to the wet condition of the blacktop pavement, other conditions which may have existed in the road surface, or the other driver's unexpected encounter with obstacles or the curve. Especially because the control or lack of control of a moving motor vehicle is usually something that only the operator thereof can sense or determine through awareness of the responses the machine makes to his physical manipulations, for Hale to add that "she . . . lost control of the car" would inject into evidence a conclusionary supposition which (as far as this record is concerned) he could not come by through his own perceptivity. Sconce v. Jones, supra, 343 Mo. at 370, 121 S.W.2d at 781–782. Hale's reported concluding assertion "that he tried to get out of the way but couldn't," leaves one to wonder how he tried and why he was unsuccessful. This portion of the purported statement is kindred to Hale's alleged statement repeated by Jones that "I did all I could do and then they hit me," which is obviously a mere conclusion that invades the province of the jury. Gillis v. Singer, 86 S.W.2d 352, 358[11] (Mo.App.1935); Brown v. Adams Transfer & Storage Co., 31 S.W.2d 117, 121–122[6] (Mo.App.1930). An additional reason for excluding opinions and conclusionary utterances from the res gestae exception is that, when superficially considered, they have much too great a weight. "The various factors entering into the observation and self-persuasion of the speaker cannot be reproduced, and a jury is much too likely to shirk a judgment of its own in reliance upon his." 163 A.L.R., supra, at 188.

The other trial errors complained of by plaintiff may not again occur on retrial and need not be considered here. For the aforesaid reasons the judgment is reversed and the cause remanded for a new trial.

All concur.