STATE of Missouri, Plaintiff–Respondent,

v.

Alexander Scott GOEMAN, Defendant–Appellant.

No. SD 31727.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 21, 2012.

Tanya M. Maerz, Clayton, MO, for Appellant.

Anthony M. Brown, Forsyth, MO, for Respondent.

DON E. BURRELL, J.

Alexander Scott Goeman ("Defendant") appeals his conviction after jury trial of careless and imprudent driving ("C & I") (*see* section 304.012).[1] Defendant claims the trial court erred in denying his motion for judgment of acquittal "because the State failed to present evidence sufficient to convict [Defendant of C & I]." Defendant also claims that "because the prosecutor improperly instructed the jury not to make a separate finding of a required element of the crime ... [the trial court] lowered the State's burden of proof in violation of [Defendant's] due process rights." Because sufficient evidence supported each element of the charged offense, and because Defendant did not object at trial to the now-challenged portion of the prosecutor's rebuttal closing argument, we affirm.

1. Unless otherwise stated, all statutory references are to RSMo 2000.

## Standard of Review & Governing Law

"When considering sufficiency of evidence claims, our review is limited to determining whether the evidence is sufficient for a reasonable trier of fact to find each element of the crime beyond a reasonable doubt." *State v. Sitton,* 323 S.W.3d 65, 69 (Mo.App. S.D.2010). We accept as true all evidence and reasonable inferences that support the verdict, and we disregard all evidence and inferences that are contrary to the verdict. *State v. Crawford,* 68 S.W.3d 406, 407–08 (Mo. banc 2002). Our summary of the evidence relevant to Defendant's claims will be presented in accordance with these principles. *See State v. McDonald,* 321 S.W.3d 313, 315 (Mo.App. S.D.2010).

C & I is prohibited by section 304.012.1, which provides:

> Every person operating a motor vehicle on the roads and highways of this state shall drive the vehicle in a careful and prudent manner and at a rate of speed so as not to endanger the property of another or the life or limb of any person and shall exercise the highest degree of care.

## Facts and Procedural Background

Shortly after 11:00 p.m. on December 12, 2009, Defendant was driving north on Route 160 from Forsyth toward Springfield in a black Mitsubishi Galant. It was wet and foggy outside. Stanley Jones, accompanied by his wife, was approaching Defendant's vehicle from the opposite direction in their red Dodge Neon. Mr. Jones estimated his speed to be about 40–45 miles per hour. At that speed, he was not having any problems with his vehicle sliding on the roadway.

Cassandra Brown, accompanied by her husband, was driving about three car lengths behind the Joneses' vehicle. Mrs. Brown was generally traveling at the speed limit, but she said that she and the car ahead of her dropped below the speed limit "at some point" because of curves in the road. Mr. Brown had not noticed any sliding of their vehicle as "the roads weren't bad like that."

As the Joneses and the Browns approached a curved portion of Route 160 near its intersection with Highway H, Mrs. Brown observed that Defendant's car "was driving extremely fast. . . . It almost looked like [it was] maybe racing the car in front of [it] or something."

Mrs. Jones looked toward Highway H where there "is a very sharp corner," and she saw "two cars coming [in her direction] towards the corner, very fast." It looked to her like the cars "were racing each other because they were so close and going so fast." Mrs. Jones said something to her husband about how fast the cars were "coming up to such a sharp corner with it being dark, it being wet, kind of foggy." Mrs. Jones said she "wouldn't want to be going that fast or be in one of those cars." The first of these cars passed by the Joneses without incident. Mrs. Jones then saw that the second car was in her lane with "the headlights very close" and "coming kind of sideways." Mrs. Jones heard the crunching sound of the collision and lost consciousness.

Mrs. Brown saw "the black car cross over the [center] line and hit the red car head-on." Mrs. Brown drove her vehicle into the ditch on the opposite side of the road to avoid hitting the other two cars. Mrs. Brown recalled that Defendant's car rolled over and landed upside down off the side of the road as the Joneses' car spun around in the road. Mrs. Brown called 9–1–1, and emergency personnel responded

to the scene. Mr. and Mrs. Jones and Defendant were all injured in the collision.

Missouri State Highway Patrol trooper James Linegar responded to the scene about 20 minutes after the collision had occurred. Although he had received training in accident investigation and reconstruction, he did not consider himself an expert in accident reconstruction. One of the vehicles he saw was still in the road and was severely damaged. The other vehicle involved in the collision was off the road, upside down, and was substantially damaged. Defendant was still partially inside his vehicle, and other emergency personnel were trying to get him out of the car. Trooper Linegar contacted Defendant, who told the trooper that he did not remember what had happened.

Trooper Linegar observed small skid marks across the center line of the road. He testified that the speed limit on that portion of Route 160 was 55 miles per hour with what he believed was "a recommended speed limit for that curve" of 40 miles per hour, which would have been listed on "a sign that MoDOT puts up." He said that the reduced speed was one "that you can travel pretty much, no matter what the conditions, and stay on the roadway." Trooper Linegar believed that Defendant had caused the collision by driving too fast for the conditions of the road, and he marked that as the sole cause of the collision on his accident form. Trooper Linegar gave Defendant a citation for "operating a motor vehicle in a careless and imprudent manner by losing control, crossing the center line and striking another vehicle head-on[.]"

The relevant portion of the trial court's verdict-directing instruction stated:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about December 12, 2009, ... [Defendant] operated a motor vehicle on U.S. Highway 160 at Route H, a public highway, and

Second, that [D]efendant drove too fast for road conditions, and

Third, that [D]efendant thereby endangered the life or limb of any person, and

Fourth, that in doing so defendant operated the motor vehicle in a careless and imprudent manner, and

Fifth, that [D]efendant was involved in an accident, then you will find [Defendant] guilty under Count I of careless and imprudent driving.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find [Defendant] not guilty of that offense.

In its initial closing argument, the State addressed the five elements of [C & I] as set forth in the instruction. In regard to the second element, the prosecutor urged the jury to rely on the testimony of Trooper Linegar and the other witnesses' descriptions of the road conditions and observations of Defendant's vehicle. In addressing the fourth element, the prosecutor stated that "not only was [Defendant] traveling too fast, he was being careless and imprudent, as well, by racing."

Defense counsel argued to the jury, among other things, that Defendant's "car hit a slick spot." In referring to the "careless and imprudent" element, he argued to the jury that "[i]t must be a rash decision—[.]"

In rebuttal, the State argued:

[Defense counsel] wants to give you his own definitions of careless and im-

prudent when he talks about the instruction that you'll receive when [Defendant] is charged with [C & I].

But what you'll find, when you read that instruction closer when you go back to the back, is that it says: First, [Defendant] was driving on this date and this location. Second, that he drove too fast for the road conditions, period. That is one thing you have to find, one of the five, of that charge. Third, that he endangered the life and limb of any person. We've been through that part. And, fourth, that in doing so, meaning in doing the first three things of that charge, he operated in a careless and imprudent manner.

That is not a separate, extra definition of something that you have to find that he did.

It is you agreeing—if you were to find him guilty, you agreeing that in doing these first three things that he was operating in a careless and imprudent manner, okay?

A bit later, the prosecutor also argued:

Obviously, it's careless and imprudent, if we've shown all of those things. And most likely, when someone is found guilty or has committed the act of [C & I], it's usually unintended, okay?

So, don't let that fool you by thinking that there's some extra element that we have to show that he intentionally drove his car into these people. That's not an element. The State doesn't have to prove that, okay?

At the end of her rebuttal argument, the prosecutor reminded the jury to read the instructions carefully and said "[t]hat all of the elements are there for [C & I]." Defendant did not object to any portion of the State's rebuttal argument.

The jury found Defendant guilty of C & I. Defendant's motion for new trial asserted, *inter alia,* that: 1) the trial court violated Defendant's due process rights by permitting the State to argue that the first three elements of the verdict director, "if proven, establish the fourth element"; and 2) the trial court erred in denying the Defendant's motion for judgment of acquittal at the close of the evidence "because the [S]tate failed to present evidence of all elements sufficient for [Defendant] to be found guilty[.]" The trial court denied the motion for new trial and sentenced Defendant (who had waived jury sentencing) to one year in the county jail, with all but 60 days suspended. This appeal timely followed.

## Analysis

### Point I—Sufficiency of the Evidence

Defendant, who is represented by different counsel on appeal, contends that "the State failed to present evidence sufficient to convict [him] of [C & I]" and that the trial court therefore "erred in ... overrul[ing Defendant's] motion for judgment of acquittal made after the close of [ ] all evidence[.]" In support of his claim, Defendant quotes *State v. Stark,* 651 S.W.2d 503 (Mo.App. E.D.1983), for the proposition that if "two equally valid inferences can be drawn from the same evidence," then guilt beyond a reasonable doubt has not been established. *Id.* at 505. While *Stark* has not been explicitly overruled, its "equally valid inferences rule" was abrogated by our high court in *State v. Chaney,* 967 S.W.2d 47, 54 (Mo. banc 1998). Under *Chaney,* we must now "presume that the trier of fact drew all reasonable inferences in favor of the verdict[,]" and "the fact that the jury selected between valid inferences is not a basis for

reversal." *State v. Freeman*, 269 S.W.3d 422, 424 n. 4 (Mo. banc 2008).

The specific challenges asserted by Defendant are to the sufficiency of the evidence to prove the second and fourth elements of C & I—that he: (2) "drove too fast for the road conditions"; and (4) "operated his vehicle in a careless and imprudent manner[.]" Defendant insists he could not be convicted simply "because he lost control of his vehicle in inclement weather and because lay witnesses opined he was traveling fast." This claim, although true, relies on a mischaracterization of the evidence presented at Defendant's trial as viewed in the light most favorable to the verdict.

### Element 2—Driving Too Fast for the Conditions

Citing his own trial testimony, which the jury was not required to credit, *see State v. Stevens*, 366 S.W.3d 635, 638 (Mo.App. S.D.2012), Defendant argues that "[t]he only concrete estimation of the speed of [his] car on the night of the accident was that he was traveling at 40–45 miles per hour"—a speed less than the posted speed limit of 55 miles per hour. Apparently assuming that his testimony had to be accepted as true by the jury, Defendant then compares his case to *City of Kansas City v. Oxley*, 579 S.W.2d 113, 116 (Mo. banc 1979), where "uncorroborated opinion evidence" was rejected as sufficient evidence that a driver exceeded the posted speed limit,[2] and *State v. Ostdiek*, 351 S.W.3d 758, 769 (Mo.App. W.D. 2011), where testimony that the defendant's vehicle "just appeared" to be going faster than other vehicles was insufficient to find that the driver had exceeded the posted speed limit.[3]

The State agrees that "[t]he mere fact that an accident occurred is insufficient to establish careless and imprudent driving" and that it was required to present evidence that either directly proves C & I or allows it to be reasonably inferred. *See City of St. Louis v. Judd*, 193 S.W.2d 917, 918 (Mo.App. St.L.D.1946). The State's argument is that the totality of the evidence presented was sufficient to allow the jury to reasonably infer that Defendant was operating his vehicle in a careless and imprudent manner. We agree.

Neither Defendant's testimony nor the requirements for proving the offense of speeding demonstrate that the evidence at Defendant's trial was insufficient to prove the elements of C & I beyond a reasonable doubt. The jury was not required to believe Defendant's self-

---

**2.** *But see State v. Kimes*, 234 S.W.3d 584, 588 (Mo.App. S.D.2007) (*Oxley* does not establish a "bright line" rule regarding opinion testimony and officer's estimate that driver was traveling 35 m.p.h. in 20 m.p.h. area established "a great variance from the posted speed limit" sufficient to sustain the conviction).

**3.** Defendant also cites *Walsh v. Table Rock Asphalt Constr. Co.*, 522 S.W.2d 116 (Mo.App. Spfld.D.1975), as illustrating the reversal of a "conviction" where a witness was permitted to describe a vehicle's speed as "fast." *Walsh* was a civil case involving out-of-court state-ments made by a driver before he died from injuries resulting from a collision, and the court considered whether the driver's opinion statements about the cause of a crash could form the basis of a *res gestae* exception to the hearsay rule. *Id.* at 119–20. Witness testimony concerning the statements was admitted over objections based on hearsay and other grounds. *Id.* at 120. Here, there was no objection to the testimony of Mrs. Jones and Mrs. Brown about their observations of Defendant's vehicle and another vehicle as they approached the curve in the highway.

serving testimony, and the State did not have to prove that Defendant's speed exceeded any particular miles-per-hour limit; it simply had to prove that whatever speed Defendant was traveling was too fast for the road conditions such that it endangered someone else's property or "the life or limb of any person[.]" Section 304.012.1. The testimony from Mrs. Jones and Mrs. Brown about Defendant's speed was substantial, competent evidence because "persons who know what motor vehicles are and have seen them operate may give their opinion as to the rate of speed, the weight of their opinion being for the jury to determine[.]" *State v. Beck*, 449 S.W.2d 608, 612 (Mo. banc 1969); *see also Hewitt v. City of Kansas City*, 761 S.W.2d 679, 681 (Mo.App. W.D.1988) ("A person familiar with speeds may testify as to the speed of a vehicle observed").

■ Defendant admitted that it was foggy, that it had been raining, that he had traveled this road before, and that it was dark at the time of the collision. Mrs. Brown testified that Defendant was traveling "extremely fast" as he approached what Mrs. Jones described as "a very sharp corner" in the road. This evidence was sufficient for the jury to find beyond a reasonable doubt the first of the two challenged elements—that Defendant was driving too fast for the road conditions at the time of the collision.

#### Element 4—Careless and Imprudent

■ Defendant also argues that "[t]here is no proof beyond a reasonable doubt that [Defendant] acted carelessly and imprudently when he lost control of his vehicle." We disagree. In addition to the witnesses' testimony about Defendant's speed, the foggy night, and the sharp curve in the road, both Mrs. Jones and Mrs. Brown

testified that Defendant appeared to be "racing" another car that was traveling in the same direction as Defendant. Mrs. Jones elaborated that her impression of racing was based on the closeness and speed of the two cars. Trooper Linegar testified that the curve in the road had a reduced recommended speed. This substantial, competent evidence was sufficient to allow the jury to conclude, beyond a reasonable doubt, that Defendant was operating his vehicle in a careless and imprudent manner by racing another vehicle on a foggy night on a wet road while approaching a sharp curve he had reason to know was there. Point I is denied.

#### Point II—No Plain Error in Court Not Intervening in Closing Argument

■ Defendant's second point claims the trial court erred in convicting him of C & I "without a finding of each element beyond a reasonable doubt" and that this occurred "because the prosecutor improperly instructed the jury not to make a separate finding of a required element of the crime," resulting in a violation of Defendant's due process rights. Defendant argues that the prosecutor "informed the jury that elements [one through three], if proven, established the fourth element [ (careless and imprudent) ]," citing the State's rebuttal argument that the fourth element meant "in doing the first three things of that charge, he operated in a careless and imprudent manner." Defendant also criticizes the prosecutor's statement that the fourth element "*is not a separate, extra definition of something that you have to find that he did.*" (Emphasis added.)

■ Defendant concedes that he voiced no objection to the argument when it was made and that review "is for plain error

resulting in a manifest injustice[,]" citing *State v. White*, 247 S.W.3d 557, 563 (Mo. App. E.D.2007). "In order to preserve for appellate review a complaint about improper jury argument, a defendant must object at the time the argument is made." *State v. Lingle*, 140 S.W.3d 178, 190 (Mo.App. S.D.2004). Despite this well-settled state of the law, Defendant points out that he did raise the issue in his motion for new trial, and on that basis he claims that "[a]rguably, an abuse of discretion standard of review applies." It does not.

■■ Raising an issue for the first time in a motion for new trial, when an objection could have been made at trial, is insufficient to preserve the claimed error for appellate review. *See Lingle*, 140 S.W.3d at 190 (defendant did not preserve his complaint for review when he failed to object during closing argument, but requested a mistrial at the conclusion of the prosecutor's argument and included the alleged error in his motion for new trial). An unpreserved claim of error concerning closing argument is reviewed, if at all, for plain error. *State v. Wolf*, 326 S.W.3d 905, 907 (Mo.App. S.D.2010). Such review "is to be used sparingly." *State v. Clemons*, 946 S.W.2d 206, 224 (Mo. banc 1997).

■■ Plain error claims related to closing arguments "are generally denied without explication." *White*, 247 S.W.3d at 563. The defense may employ trial strategy in deciding when to object, "[t]rial judges are not expected to assist counsel in trying cases," and trial judges should intervene "only in exceptional circumstances." *Id.* Further, the trial court risks an allegation of error if it decides to interfere with a summation without a request from the defendant that it do so. *State v. Chavez*, 128 S.W.3d 569, 577 (Mo.App. W.D.2004).

■■ Alleged improper comments in closing argument must also "be interpreted in light of the entire record rather than in isolation." *White*, 247 S.W.3d at 563. There is no claim in this case that the trial court improperly instructed the jury on the elements of C & I. And immediately following the necessary elements was the admonition, "However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find [Defendant] not guilty of that offense." We presume the jury followed the court's instructions. *See Chavez*, 128 S.W.3d at 578.

■■ In addition, the prosecutor outlined in his initial closing argument the evidence adduced at trial and specifically asserted how that evidence supported each of the five necessary elements of C & I. Assuming that the subsequent rebuttal argument Defendant now attacks was improper, it was offered in response to defense counsel's improper attempt to define the careless and imprudent element of the crime to require the jury to find that Defendant made a "rash decision."

> "[W]hen complained of remarks come in the rebuttal portion of argument by the [S]tate, the trial court may consider whether the comments were invited" in that "[t]he [S]tate may go further by way of retaliation in answering the argument of the defendant than would be normally allowed." *State v. Pratt*, 858 S.W.2d 291, 292 (Mo.App.1993) (internal citation omitted). The State "has considerable leeway to make retaliatory arguments at closing" and it "may retaliate to an issue raised by the defense even if [the] comment would be improper." *State v. Sanchez*, 186 S.W.3d 260, 265 (Mo. banc 2006).

*State v. Hall*, 319 S.W.3d 519, 523–24 (Mo. App. S.D.2010).

Plain error review should not often be granted. *See Clemons,* 946 S.W.2d at 224. The instant case does not constitute one of those rare occasions on which such review is appropriate, and we deny the unpreserved error claim without further explication. *White,* 247 S.W.3d at 563.

The judgment of the trial court is affirmed.

JEFFREY W. BATES, J. and DANIEL E. SCOTT, P.J., concur.